WRIGHT S. ANDREWS ET AL. V. ISABELLA HAGADON.

(Case No. 1191.)

1. HOMESTEAD.— A homestead in a city, town or village may consist of one or more lots, but there is nothing in the constitution and laws that forces the homestead character on a lot or lots adjoining the one on which the residence is situate. Whether such lot or lots are part of the homestead is a question of fact for the jury, to be determined by the evidence; and there are two requisites that must concur to make them a part of the homestead: 1st. The owner must intend the property as a part of his homestead. 2d. He must in some way use it as such.

2. FACT CASE.— See opinion for facts held not sufficient to invest property claimed as exempt from forced sale, with homestead attributes, and also for facts not sufficient to constitute married children constituents of the family.

3. RELEASE.— Part payment by a principal of a note, secured by trust deed, when the payment is made on a verbal promise to extend time of payment on the amount remaining, with no new, independent consideration to support the promise, cannot operate as a release or waiver of right against sureties on the note or to enforce payment by foreclosing the lien created by the trust deed.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

The following statement of the pleadings given by appellant is adopted as correct; the evidence is sufficiently stated in the opinion for an understanding of the case:

Suit was brought January 19, 1878, by Isabella Hagadon, widow, against Thomas H. Edgar, to recover the amount of a promissory note made by Thomas H. Edgar, dated 1st September, 1873, due twelve months after date, for the sum of two thousand dollars, with twelve per cent. interest (less a credit of $340), and against the heirs of Alexander Edgar and E. R. Edgar, to foreclose a mortgage or deed of trust, made by Thomas H. Edgar, under a power of attorney made by Alexander Edgar and his wife, dated August 11, 1873, authorizing Thomas H. Edgar to mortgage lot 5, in block 378, the property of Alexander Edgar and wife, in the city of Galveston, to

effect a loan, and borrow money for himself, and thereupon to assure and secure the payment thereof, to grant and deed by mortgage or deed of trust, or other instrument in writing, on lot 5, in block 378, in the city of Galveston.

Thomas H. Edgar made no defense, and judgment was rendered against him by default, for the amount of the note and interest.

The other defendant answered, and pleaded that the debt was the personal debt of Thomas H. Edgar, and not the debt of Alexander Edgar and wife; that Edgar and wife were but sureties, and that the sureties were discharged by neglect of plaintiff to enforce her debt against Thomas H. Edgar during the lives of said Edgar and wife; that Edgar and wife were dead, leaving constituents of their family; that the lot on which the foreclosure was prayed was, at the time of the death of Edgar and wife, a part of the homestead of the family of Edgar and wife, and that all the lots comprising the homestead did not cost five thousand dollars at the time of their designation as homestead, and denied all allegations of plaintiff.

January 22, 1879, plaintiff on leave filed first supplemental petition, and demurred to answers of defendants, again setting up execution of mortgage under the power of attorney and denying the homestead claim, and alleged that Edgar and wife had abandoned the homestead, and acquired a homestead in Chambers county and died there, leaving no debts, and there had been no administration on their estate; that the children of Edgar and wife, long before the decease of their parents, had become of full age or married; that the mortgaged lot had not, since the execution of the trust deed, been occupied by Edgar and wife, and had long since ceased to be homestead.

January 24, 1879, defendants set up that the homestead of Alexander Edgar and wife for twenty-five years last past before their decease consisted of lots 5, 6 and

7, in block 378, in the city of Galveston, and did not cost $5,000 when designated as homestead, with the buildings and other improvements thereon, under one enclosure; that they were occupied during said years by Alexander Edgar and wife and family, until in 1861, on account of the war, Edgar and wife rented out the property temporarily, and went into Chambers county as visitors, and resided with their son-in-law, W. S. Andrews, in Andrews' house as guests, where they died, but did not abandon their homestead rights in Galveston property; that at the death of Edgar and wife the constituents of the family were residing together as a family — Fanny Andrews, daughter; Phoebe Wescott, grand-daughter; minor Alice Patrick, daughter; Sydney V. Patrick, grandson; and that the homestead property vested by law in the heirs of said Alexander Edgar and wife, subject only to distribution among the heirs, and free from the claims of creditors of Alexander Edgar and wife; pleading that the said Edgar and wife were only sureties for the payment of the debt of Thomas H. Edgar; and a year or more after it became due, the plaintiff, in consideration of one hundred dollars paid to her by said Thomas H. Edgar, granted him additional time on the debt without the consent of defendant parents' sureties thereon, and pleaded that the sureties were thereby discharged in person and property.

January 28, 1879, the guardian for minor defendants adopted supplemental answer of the adults. There was judgment by default against Thos. H. Edgar; and Thos. M. Joseph, trustee, came in and made himself party. January 31, 1879, judgment final against Thos. H. Edgar for $2,720, with interest. The other defendants having submitted the matters affecting them to the court without a jury, the court adjudged the lien claimed by plaintiff under the trust deed on lot 5, block 378, and the improvements thereon established, and ordered it to be foreclosed

and sold by the sheriff of Galveston county; the proceeds to be applied to the satisfaction of the judgment against Thos. H. Edgar, and interest and cost, and the balance to defendants.

*Edward T. Austin*, for appellants.

I. The court erred in its ruling on the facts in evidence; that Alexander Edgar, the ancestor of these defendants, by building a house on lot 5 of his homestead, consisting of three lots, and fencing off a part of said lot with said house from the other lots, and renting the house to strangers, abandoned said lot 5 as a part of his homestead, although the three lots, when acquired and designated as a homestead, did not exceed in value the constitutional exemption; and that the said lot 5, after his death, leaving constituents of his family surviving, was liable to forced sale for the payment of a security debt. Const. of 1869, sec. 15, art. XI; Const. of 1876, sec. 50, art. XVI; sec. 51, art. XVI; sec. 52, art. XVI; Rev. Code, p. 31; Statute 1870, p. 127, "An act defining the homestead and other property exempt from forced sale;" Cross *v.* Evarts, 28 Tex., 533; Shephard *v.* Cassiday, 20 Tex., 24; Taylor *v.* Boulware, 17 Tex., 97; Gouhenant *v.* Cockerell, 20 Tex., 98. [Second assignment of error by adult defendants.]

II. The court erred in holding that the laches and neglect of the plaintiff in this case to enforce her lien during the lives of Alexander Edgar and wife, the note maturing September, 1874, and suit filed January 19, 1878, and the acceptance by her of a payment by the principal debtor, Thos. H. Edgar, on the note paid by him, in consideration of an extension to him, without the knowledge and consent of the sureties, did not discharge the sureties from said debt in person and property. Pilgrim *v.* Dykes, 24 Tex., 384; Wybrandt *v.* Lutch, 24 Tex., 310.

*Wheeler & Rhodes*, for appellee.

WATTS, COMMISSIONER.— The questions involved in the decision of this case are these:

1st. Was the lot in controversy part of the homestead of Alexander Edgar and wife at the time of the execution of the trust deed by Thos. Edgar?

2d. Was there any constituent member of the family of Alexander Edgar and wife, at the time of their death, to whom the homestead right descended?

3d. Was the lien on the land released by reason of appellee's extending time to Thos. Edgar?

Alexander Edgar purchased lots 5, 6 and 7, block 378, in the city of Galveston, about 1842, and had a residence upon lot 7, outhouses on lot 6, and cultivated a garden on lot 5, from thence until 1853, when he built a house on the latter, and segregated it from the others by a partition fence, and rented the same from that time until 1875. In 1861 he and his wife left the city and went to Chambers county; there lived on the farm of their son-in-law, Andrews, until their death in 1875. In 1873 they authorized their son, Thomas Edgar, by a power of attorney, to secure a loan of money for his own benefit, by giving a mortgage or deed of trust upon lot 5. The appellee, Mrs. Hagadon, loaned him $2,000 on the 1st day of September, 1873, and took his individual note therefor, payable twelve months after date; and to secure the same, he executed, as agent under power of attorney, a trust deed on the lot to Thos. M. Joseph as trustee.

The appellants claim that the lot constituted part of the homestead of Alexander Edgar and wife at the time the trust deed was executed thereon.

A homestead in a city, town or village may consist of one or more lots, but there is nothing in our constitution or laws that forces the homestead character or quality upon a lot or lots adjoining the one upon which the resi-

dence is situated.   Whether such lot or lots are part of
the homestead, is a question of fact to be determined
by the evidence, and there are two requisites that must
concur to give them this quality: the owner must intend
the property as part of his homestead, and must in some
way use it as such.

In this case the evidence establishes that for twenty
years prior to the execution of the trust deed, the lot in
controversy had been separated from the other two by a
partition fence; that during that time it had a dwelling
house situated thereon and was rented to other parties.
As said by the constitution, a temporary renting of the
homestead shall not change the character of the same,
when no other has been acquired.   Whether by residing
elsewhere, and renting the homestead for twelve or four-
teen years, would or would not work an abandonment
thereof, notwithstanding the parties had acquired no new
homestead, is not necessary for us to decide.   But the
question is, was lot 5 any part of the homestead at the
time the trust deed was executed?   Andrews swears that
Alexander Edgar and wife claimed it as such, but when
or how this claim was made, whether openly or covertly,
is not shown.   But there is one fact established by the
evidence to a degree of certainty beyond cavil, and that
is, it had not been used by them for homestead purposes
for more than twenty years prior to the execution of the
trust deed.   During that entire time it was in the posses-
sion of tenants, and not one act is shown during the time
upon the part of said Alexander Edgar and wife that
would indicate to the public that the same constituted a
part of their homestead.   After hearing all the evidence
the court found against the appellants, and we are not
prepared to say but that the finding was amply sustained
by the evidence.   See Peregoy v. Kottwitz, decided at this
term of the court.

I am individually of the opinion that, taken in connec-

tion with the other circumstances of the case, the fact that Alexander Edgar and wife, by power of attorney duly executed, selected out that lot from the others, and empowered their attorney or agent to secure a loan by executing a deed of trust or mortgage thereon to secure the payment thereof, ought of itself to be considered as a potent circumstance in determining the character of the property.

The evidence discloses the fact, that at the time of the execution of the trust deed, and for twelve years prior thereto, Alexander Edgar and wife were residing with their son-in-law, Andrews, upon his farm in the county of Chambers, and that their children were all married.

No legal or moral obligation is shown by the evidence, upon the part of Alexander Edgar and wife, to support their married children, nor is any corresponding state of dependence shown thereby on the part of these married children for such support from their parents. On the contrary, it is shown that they were not living with their parents on the homestead in Galveston. The record clearly shows that they were not constituents of the family of their parents at the decease of the latter, and therefore were not entitled to the homestead protection as such. Howard v. Marshall, 48 Tex., 478; Roco v. Green, 50 Tex., 490.

Appellants claim that as to the note, Alexander Edgar and wife occupied the position of sureties, and that appellee had released and waived the trust deed or lien upon the lot, by an agreement with Thomas Edgar extending him time upon the note for a valuable consideration, without the consent of the other parties. The evidence shows that Thomas Edgar paid to appellee one hundred dollars, the same being accrued interest on the note, and that she promised therefor to give him time on the note. We think it exceedingly questionable whether the rule of suretyship could be applied to a case like the one before

the court. But admitting that it could be done, the evidence shows that there was no consideration for any supposed promise upon the part of appellee to extend time on the note. He only paid what he was justly and legally bound to pay. It is well settled that there must be some independent consideration, other than the mere payment of part of the note, to support such a promise. Hunter *v.* Clark, 28 Tex., 162, and authorities there cited.

The objection that appellee delayed so long in commencing this suit that the said lien was lost or waived, is not well taken. The note was not barred by the statute of limitations, and we know of no reason why a delay in bringing the suit should otherwise work a loss of the lien.

We are of the opinion that there is no error in the judgment, and that it ought to be affirmed.

AFFIRMED.

[Opinion delivered March 28, 1881.]