Adopted December 16, 1890.

---

### B. OPPENHEIMER ET AL. V. F. S. FRITTER.

#### No. 6739.

1. **Homestead in Town—Designation to Other Use.**—Ceasing to use a store house and leasing it from year to year is an abandonment of the homestead exemption. See example.

2. **Use of Lot in Connection with Home.**—See facts where *held* that occupation and use of part of a lot as horse and wood yard in connection with the residence adjoining kept up its character as homestead and its exemption from execution, although enclosed with houses leased so as to be abandoned as parts of the homestead.

APPEAL from Kinney. Tried below before Hon. Winchester Kelso.

Suit brought March 7, 1888, by appellee. B. Oppenheimer & Co. caused an execution under a valid judgment rendered in their favor against appellee, Fritter, in the County Court of Kinney County, to be levied upon parts of lots 4 and 5, in block 6, in the town of Brackett, in Kinney County, which were legally sold by the sheriff to appellants, and deed was executed to them for the same. Plaintiff below, the appellee Fritter, claimed the land sold as a part of his homestead. He brought this suit to establish his homestead rights, and to have the deed canceled, to be quieted in his possession, etc. Defendants answered admitting that they had bought the land under the execution sale, but denied that it was a part of plaintiff's homestead. The form of the petition in the first part of it was as in trespass to try title, but in addition thereto he set up the fact of the levy and sale, that the deed was a cloud upon his title, and the fact that the land was a part of his homestead in the town of Brackett.

The court overruled the general demurrer to the petition, and upon the evidence rendered judgment for the plaintiff sustaining the homestead claim, and canceled the deed. To the action of the court in overruling the general demurrer appellants assign error, upon the ground that the suit is in the nature of trespass to try title, in which a deed can not be canceled.

Other assignments, in effect, are that the court erred in finding that the lots were exempt from forced sale as a homestead at the time of the levy and sale, and especially in holding that that part of lot 5 on which is erected a rock house known as the restaurant was so exempt as a part of the residence homestead; also in holding that the business houses and lots had been only temporarily rented by plaintiff, because the question of whether the renting was temporary did not depend upon the intention of plaintiff to occupy the same again as a business homestead, when the evidence showed that he had not used it as such nor as a part of his family residence for years; nor did it depend upon the fact that he was using the rents for the support of his family, nor upon what plaintiff might think was a temporary renting, nor on its present value.

The following is a plat of the premises:

The testimony given by plaintiff is in the opinion.

The conclusions of fact as filed by the court are that plaintiff built a business house on the southwest corner of lot 5 in 1868; married in 1873 and moved on the lots, and has since continuously resided on them with his family as his homestead; that he failed in business in 1875, and has not used the business house himself since; that he has from time to time rented the business house to tenants when he could get one to occupy it,

and when not occupied by tenants he used it for the comfort and convenience of his family, the renting being for the purpose of maintainance of his family; that both lots are fifty-five varas square; a partition fence between the dwelling and the business house, erected for the better enjoyment and protection of the home house and lot, and that the other part of the lot was used for horse lot and wagon lot for the stock of plaintiff and his family; that all the property except the business house has been continuously used for homestead purposes, and the business house was used as before stated; that the entire property is worth less than $2000; that there are no outhouses or conveniences sufficient for the comfort of the family, and that the whole property is hardly adequate for the family wants; that the execution was on that part of the lot west of the fence; and that plaintiff has no other property than that in question, which is necessary for the use of the family, consisting of himself, wife, and six children. The court then concludes as the law of the case that the temporary renting of the business house on the homestead lots was not of such a character as to render it subject to forced sale, and that plaintiff should recover.

*A. A. Dial* and *I. L. Martin,* for appellants.— 1. This action is brought in the nature of trespass to try title, when in truth it is a suit to cancel a sheriff's deed, as is most clearly shown by the original petition filed herein. We are not willing to concede that the action of trespass to try title is the proper remedy in this character of suit, especially where the question of title is not an issue. Hence we contend that the general demurrer should have been sustained.

2. With all due respect we submit that the findings of the court are not sustained by the evidence as we find it in the record or statement of facts. The language of appellee is "that he has constantly had them (meaning the premises sold) rented out at all times whenever he could get a tenant for them;" that he used the rent derived from them for the support of his family. True, he stated he used the open lot in rear of stores to put his horse and buggy in, but admitted that some of his renters had had exclusive control of the vacant parts of the lots for wagon and camp yards. Medlenka v. Downing, 59 Texas, 32; Shryock v. Latimer, 57 Texas, 674; Wynne v. Hudson, 66 Texas, 8; Stringer v. Swenson, 63 Texas, 13.

3. A place to exercise the calling or business of the head of a family is the place or house in which such calling or business is carried on. There is nothing in the record to show that the appellee has pursued any calling or business since his failure in 1874 or 1875. On the contrary, he states that he had not pursued any such calling or business. Hence we contend that it is immaterial whether he rented the business houses temporarily or permanently, nor does it matter what the intention of appellee may have been. The fact that he was renting the buildings and

using the revenues arising from such rents is conclusive that he was not using the premises as either a homestead or place of business. The value of the premises does not affect their liability to levy and forced sale. Wynne v. Hudson, 66 Texas, 8; Stringer v. Swenson, 63 Texas, 12; Shryock v. Latimer, 57 Texas, 679; Medlenka v. Downing, 59 Texas, 32.

COLLARD, JUDGE.—This case presents principally questions of fact, or rather of mixed law and fact. The judgment, execution, levy, and sale vested the land in suit in appellants if at the time of the levy and sale it was subject to forced sale, but if it was the homestead of the plaintiff, Fritter, no title passed by the sale. The levy was made on February 9, 1888, and on March 6, 1888, the land was sold and bid in by the appellants.

The residence of appellee is on the east side of lot 4; lot 5 adjoins lot 4; both lots form a square survey fifty-five varas on each side. There is a fence running through the lots northward and southward, and west of the fence is the land in controversy, on which are an old house once used as a store house, and a rock house twenty by thirty feet in dimensions. Cook Alley lies east of the property and North Street to the west. The facts upon which the homestead claim rests are stated in the testimony of Fritter, the appellee. The testimony is not lengthy, and we will set it out in full. He testified that "he was a married man and the head of a family. He purchased the lots for a homestead and had lived upon them since 1868; had been engaged in the mercantile business up to 1874 or 1875, when he failed. He occupied the old picket building, marked on the map 'store' (next to the 'store restaurant'), for a dry goods and grocery store. After he bought lot 5 he erected thereon the rock store house, in which he run a barroom until the latter part of 1874 or the early part of 1875. The fence across the lots was erected over eight years ago. Since he failed he has never occupied either of the store buildings as a place of business. He had them constantly rented out when he could get a tenant for them, and used the rent derived from them for the support of his family. He at all times used the open lot in the rear of the store to put his horse and buggy in. Some of the tenants after he failed had exclusive control of vacant parts of lots in rear of the building, using the same in connection with the rented store as a wagon or camp yard. The buildings are now occupied by tenants, and have been occupied by those who are now in them for nearly a year, and I have always rented them ever since I went out of business whenever I could get a tenant.

"The house marked on the map 'shop' belongs to Mr. Herzing; permitted him to put the house there at his own expense and with the right to remove it when he wanted to. He pays me ground rent, $2 per month. The whole property was not worth $5000 at the time I went on it, and is not worth over $2000 now. I would take $2000 for the whole property at

any time. I am not able to state the names of different tenants to whom I have rented the houses at different times, and who have occupied them since 1874. I only rented the different houses temporarily. I have never intended to abandon any part of it as my homestead. All the property is necessary for homestead purposes. The division fence was put up by my wife to keep the hogs out of the house; it is a picket fence and is less than twenty feet from the door. I have no outhouses at all on the part where the residence house is. My horse lot, buggy shed, and wood yard are on the part spoken of that I sometimes rent out. I have a wife and six children, and rent the old store house when I can do without the space better than I can the money for my family. I have no other property or homestead. I never get over $17 a month rent. When not renting I use it all; use the old store house for storing things. The only buildings on the entire property are where my family lives, the rock store, and an old tumble down jacal which is not fit to use. Have not rented the store all the time. By using all the property I would not have room enough."

This evidence falls short of proving that the houses levied on constitute any part of the homestead, either as business homestead or as part of the residence homestead. They had not been used as a place of business since plaintiff failed in 1874 or 1875; and the evidence does not tend to show that plaintiff ever intended to resume business and occupy them for that purpose. The evidence tends to show that the houses were held to rent, and not to use as a part of the residence for its enjoyment and for the convenience of the family. The houses had been rented for about fourteen years, all the time when a tenant could be found to take them. They were used when not rented to store things in, and it may be for the convenience of the family, but this was evidently a temporary use. It was evidently not the intention to permanently so use them, but rather to rent them.

Plaintiff seemed to think that if he kept them rented and used the proceeds of the renting for the support of his family they would be protected from forced sale as homestead property. This supposition was incorrect. The mere use of the rents to support the family will not create or maintain a homestead right. It was not the intention of plaintiff to permanently use the houses as a homestead. They were not adapted to such use. We can not hold with the court below on this question. The houses were not homestead property. Medlenka v. Downing, 59 Texas, 32; 57 Texas, 678; Wynne v. Hudson, 66 Texas, 8; 63 Texas, 13.

The evidence of use of the open space on the lots is sufficient to make it a part of the homestead. It was used as a horse lot, wood yard, etc., in connection with the residence, and though it, or some of it, had been sometimes rented, and the exclusive use of it surrendered to a tenant for awhile, it did not lose its homestead character by such temporary rent-

ing.    Pryor v. Stone, 19 Texas, 371; Axer v. Bassett, 63 Texas, 545; Rollins v. O'Farrel, 77 Texas, 90.

The ground on which the shop stands was not exempt as a part of plaintiff's homestead.    Plaintiff allowed Herzing to put the house there at his, Herzing's, own expense, with the privilege of moving it when he, Herzing, saw fit, paying $2 ground rent.    This was not a temporary renting.    It does not appear when the lease is to terminate, if ever; nor does it appear that plaintiff can terminate it at all.    It can only terminate by act of the tenant.    In such case the ground on which the shop stands can not be protected as a part of plaintiff's horse lot or wood yard.    Of course this opinion can not affect the rights of the tenant under his agreement with plaintiff to use the ground or to move the shop.    We intend only to say that the levy and sale conveyed such interest in the shop and premises as were vested in plaintiff at the time of the levy.

Our conclusion is the judgment of the lower court should be reversed and rendered in conformity with the views expressed in this opinion.

*Reversed and rendered.*