ADKINS–POLK CO. v. RHODES et ux.
(No. 1314—5408.)

Commission of Appeals of Texas, Section A.
Feb. 12, 1930.

Samuels & Brown and P. Walter Brown, all of Fort Worth, for plaintiff in error.

Clay Cooke, of Fort Worth, for defendants in error.

HARVEY, P. J. This suit was brought by Adkins-Polk Company against M. Y. Rhodes to recover on a promissory note, and against Rhodes and his wife for the foreclosure of a deed of trust lien on a certain parcel of land, the separate property of Mrs. Rhodes. The case was tried to a jury, on special issues, and judgment was rendered in favor of the company against Rhodes for the amount due on the note, but a foreclosure of the lien was denied. The company appealed, and the Court of Civil Appeals affirmed this judgment. 13 S.W.(2d) 386. The company sued out a writ of error.

The material facts are as follows:

The Adkins-Polk Company is a corporation engaged in the wholesale grocery business. On November 1, 1925, M. Y. Rhodes, who conducted a retail grocery business in the town of Arlington, was indebted to the said company in the sum of $1,454.48. This debt was past due, and, on the date mentioned, Rhodes executed to the company the note in controversy, for the amount of said debt. The note, according to its terms, was payable on or before one year after date, and bears 10 per cent. interest from date until paid. The note, as well as the deed of trust hereinafter mentioned, contained a stipulation to the effect that, in the event Rhodes sold his said grocery business, or discontinued said business, the note would mature at once. In consideration of the extension of the time of payment of the Rhodes debt, which resulted from the execution of the note, Rhodes and his wife executed the deed of trust in controversy to secure the payment of the note. The deed of trust covers a town lot in Arlington, which lot is 50 feet wide, east and west, by 190 feet long. The lot, as well as the adjoining lot, upon which stands the family dwelling house of Rhodes and wife, was the separate property of Mrs. Rhodes, but the title stood in the name of her husband. The evidence conclusively shows that all the lot in controversy constituted a part of the residence homestead, except a portion on the north end of the lot. On this portion stood a one-story brick building, an automobile wash rack, and a driveway. The building was occupied and used by a tenant as a public garage, and the wash rack and driveway were used by him in connection with said business. The portion of the lot so used by the tenant has never been used for home purposes by Rhodes and wife. The building, and appurtenant improvements mentioned, had been rented out to successive tenants, and used by said tenants, as their place of business in conducting a public garage, ever since Mrs. Rhodes acquired the two lots which have been mentioned. At the time the deed of trust was executed, Rhodes intended

to go into the garage business some time in the future, and use and occupy said garage property as a place of business.

The deed of trust in controversy was executed by Rhodes and his wife before a notary public of their own selection. The notary did not read or explain the deed of trust to Mrs. Rhodes, when he took her acknowledgment to same. As a matter of fact, Mrs. Rhodes did not read the instrument, and did not understand all of its provisions. The notary, however, attached to the instrument his certificate of the acknowledgment of Mrs. Rhodes, which certificate is in regular statutory form. After this, the deed of trust was delivered by Rhodes to the company. The company was without notice that the notary had not explained the deed of trust to Mrs. Rhodes, and was without notice that Mrs. Rhodes did not fully understand the contents of the instrument when she signed it. Nor was the company privy to any fraud or imposition perpetrated on Mrs. Rhodes in connection with the execution of the instrument. In April, 1926, Rhodes made an assignment of all his property, for the benefit of his creditors, in accordance with the provisions of our state statutes on that subject, and discontinued said grocery business. Shortly afterwards, Rhodes and the president of the Adkins-Polk Company agreed to an extension of time of payment of the note in controversy, which note had matured under the accelerating clause hereinabove mentioned. By this agreement the time of payment of the note was extended to November 1, 1926. Mrs. Rhodes was not party or privy to this agreement, and did not consent to such extension.

The Court of Civil Appeals erroneously held that the deed of trust in controversy is invalid on account of the failure of the notary to explain the instrument to Mrs. Rhodes when she signed and acknowledged it. The certificate of the notary shows on its face that all statutory requirements were met in taking the acknowledgment of Mrs. Rhodes to the instrument. The rule is firmly established that, as against one who, innocently and for a valuable consideration given therefor by him, becomes the holder of a mortgage which requires the separate acknowledgment of a married woman to give it effect, and the latter has appeared before a notary for the purpose of making such acknowledgment, the certificate of the notary, in conformity to the statute, is conclusive of the facts stated in the certificate. Hartley v. Frosh, 6 Tex. 215, 55 Am. Dec. 772; Shelby v. Burtis, 18 Tex. 645; Pool v. Chase, 46 Tex. 210; Waltee v. Weaver, 57 Tex. 571; Davis v. Kennedy, 58 Tex. 516; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. An extension of the time of payment of a pre-existing debt, which the mortgage is taken to secure, constitutes a valuable consideration, within the contemplation of the above rule, when the mortgage is given in consideration of such extension. Steffian v. Bank, 69 Tex. 517, 6 S. W. 823; Bank v. Todd (Tex. Com. App.) 231 S. W. 322; Watts v. Corner, 8 Tex. Civ. App. 588, 27 S. W. 1087; Ridgill v. Hardware Co. (Tex. Civ. App.) 178 S. W. 668.

The pleadings of Mrs. Rhodes are sufficient, in the absence of a special exception, to present the issue of a release of the deed of trust lien on the property of Mrs. Rhodes, on account of the extension of the time of payment of the note in controversy. Respecting the issue thus tendered in the pleading, no special issue was submitted to the jury and none was requested. The fact that the property covered by the deed of trust is the separate property of Mrs. Rhodes is shown by undisputed evidence. The fact is also shown by undisputed evidence that Rhodes and the company agreed to extend the time of the payment of the note to November 1, 1926, and that this agreement was made after Rhodes had discontinued his grocery business and the note, because of such discontinuance, had matured under the accelerating clause which has been mentioned. The undisputed evidence also shows that Mrs. Rhodes did not consent to such extension. But the evidence raises a fact issue as to knowledge, on the part of the Adkins-Polk Company, at the time such extension agreement was made, that the property covered by the deed of trust was the separate property of Mrs. Rhodes. This fact issue related to a distinct defense pleaded by Mrs. Rhodes—that of release on account of the extension contract. No special issue respecting this defense was requested and none submitted to the jury. In so far, then, as the particular trial involved in this appeal was concerned, the trial court was required to treat this defense as waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. But, since the judgment of the trial court is to be reversed on another ground, we deem it appropriate, in view of another trial, to consider further this phase of the case.

In so far as the lien on her separate property is concerned, Mrs. Rhodes occupies the same legal attitude as a surety on the note would occupy. Anything that would effect a release of a surety on the note will effect a release of the lien. Wofford v. Unger, 55 Tex. 483. The extension agreement between Rhodes and the company constitutes a binding contract. By making such agreement the company impliedly promised to refrain from demanding payment of the note until November 1, 1926, and Rhodes impliedly promised to pay interest, at the rate stipulated in the note, up to the extended maturity date. Each of these promises constitutes a valuable consideration for the other, and a binding extension contract was effected. Inasmuch as Mrs. Rhodes did not consent to the

extension, the lien on her property became discharged, provided the company had knowledge of the fact that the property was hers. Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Threshing Machine Co. v. Howth, 116 Tex. 438, 293 S. W. 800. That she was not really prejudiced by the extension contract does not matter. Lane v. Scott, 57 Tex. 367; Ryan v. Morton, 65 Tex. 258.

As has been stated, the portion of the lot in controversy which is not covered by the garage building, the wash rack, and the driveway constitutes a part of the family homestead, and as to such portion the deed of trust lien is invalid. But the portion covered by the garage, wash rack, and driveway was segregated from the family home, and, prior to the execution of the deed of trust, had never been put to homestead uses, and had not become invested with the homestead character. Oppenheimer v. Fritter, 79 Tex. 99, 14 S. W. 1051; McDonald v. Clark (Tex. Sup.) 19 S. W. 1023. The deed of trust created a valid lien on this portion of the lot, and the court erred in refusing to foreclose such lien.

We recommend that the judgment of the trial court, in so far as it is against M. Y. Rhodes for the recovery of the debt sued for, and that of the Court of Civil Appeals affirming same, be affirmed, that in all other respects the judgment be reversed, and the cause remanded.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are in part affirmed, and in part reversed, as recommended by the Commission of Appeals.