**SCOTTISH AMERICAN MORTGAGE CO., Limited, v. MILNER.**

No. 3875.

Court of Civil Appeals of Texas. Texarkana. July 16, 1930.

Rehearing Denied July 31, 1930.

J. A. Ward, of Mt. Pleasant, for appellant.

H. G. Brown, of Mt. Pleasant, for appellee.

LEVY, J. (after stating the case as above).

It is insisted by the appellant that the evidence conclusively established that the portion of the lot on which the smaller house was located was not exempt from forced sale as a part of the homestead, but was subject to seizure and sale. It is well settled that one may as absolutely and clearly abandon a portion of a lot which constitutes the homestead, if the same be done in good faith, by acts certainly evidencing such purpose, as he may abandon the entire homestead by ceasing to use it and never again occupying it as such. But the question is one of intention, to be gathered in each case from all the facts and circumstances. In the present case, considering all the facts and circumstances, it is believed that it may not be held as a matter of pure law that the appellee intended abandonment or discontinuance of use of the southeast portion of the lot for any homestead purpose. As appears, the appellee purchased the property as "a lot in the city of Mt. Pleasant," and there would be imputed to him the intention; in the absence of evidence to the contrary, to dedicate the entire lot to homestead use. The quantity of the property so purchased is entirely within the constitutional limit of a homestead. There were two houses upon the lot, about eight feet distant from each other; and at the time of the purchase of the lot the appellee and his wife immediately began the actual use and occupancy of the larger house. They also used the garden and the barn lot. But the smaller house, being at the time of the purchase rented, continued to be occupied by the tenant until the levy of the attachment on March 14, 1927, some three months after the date of the purchase. As explained, however, by the appellee, the renting of that house to the tenant was intended to be a temporary matter until such time as he could obtain money with which to consolidate the two houses into one building. His purpose in consolidating the two buildings into one was to add more room for boarders and roomers. And as acts of preparation therefor, as further appears from the evidence, the appellee and his family "discussed about consolidating the two houses," and the appellee "talked to Mr. Arthur Mitchell" about borrowing the money to pay for the required work and cost of uniting the two buildings. Thus there appears the fact of the actual occupation of the greater portion of the lot and the fact of expressed intention and some effort of preparation of occupancy of the smaller portion. In these circumstances the appellee was entitled to a reasonable time after the purchase of the property within which to take over the actual occupancy of the smaller house by uniting it with the larger one as proposed to be done by him. After the levy of the attachment, and throughout the time of the litigation, the cessation of the preparations to unite the two houses could not be accounted as a conclusive act of abandonment or discontinuance of homestead claim in the smaller house, as the appellee had the right to await the termination of the litigation in respect to the homestead claim. The abandonment of intention of actual occupancy of the smaller house could not be predicated, therefore, conclusively and unmistakably, merely upon the temporary renting as here shown for some three months' time before the levy of the attachment. The portion of the lot on which the smaller house was located was not made a distinct and separate part of the entire lot by a division fence, as appears in the following cases: Andrews v. Hagadon, 54 Tex. 571; Oppenheimer v. Fritter, 79 Tex. 99, 14 S. W. 1051; Adkins-Polk Company v. Rhodes (Tex. Com. App.) 24 S.W.(2d) 351. In the case of McDonald v. Clark (Tex. Sup.) 19 S. W. 1023, the renting of the house was of a permanent and not temporary character. The factual element of permanent renting differentiates that case from the present one. It could be said as a matter of fact in the present case that the renting of the house was merely temporary, and that discontinuance or abandonment of use for any homestead purpose was not intended.

■ We are of the opinion that the trial court correctly refused a peremptory instruction to the jury and did not err in admitting the evidence complained of.

The judgment is therefore affirmed.

### On Motion for a Rehearing.

■■ Our conclusion under the evidence is, as before, that the jury could have arrived at the verdict that the small house on the lot was not put to uses and purposes inconsistent with a claim of homestead and that there was not unreasonable delay in actual occupancy. The circumstances do not so conclusively show as to warrant the holding, as a pure matter of law, that the acts and conduct of the appellee evidenced an intention of relinquishment or abandonment of the homestead exemption as to the small house. Therefore the court correctly refused to give the peremptory instruction. It was plainly shown that the whole lot was adapted to the use as a homestead and the appellee purchased it for the purpose of making it his home. Beginning with the very day of the purchase of the lot, and at all times afterwards, the appellee and his family were in actual, physical possession and use of the large house and all the lot except the portion occupied by the small house, with the intention of making the premises his home. This actual, physical occupancy with the intention of making the premises a homestead fully met, as is conceded, the mode of acquiring and establishing a homestead exemption to date from the acquisition. In this view the sole question is, Does the mere fact that the other house was rented and in the occupancy of the tenant operate to defeat, as a matter of pure law, the right to claim such portion of the lot as a part of the homestead? Undoubtedly, under the established rule, the appellee had a reasonable time in which to occupy or use it for the purpose of a home. Speer on Marital Rights in Texas (3d Ed.) § 460, p. 552. There was not unreasonable delay in actual occupancy under the circumstances. The attachment levy was made within about ninety days after the purchase of the lot. There was intention accompanied by preparation to make it a part of the dwelling house. Appellee made efforts to borrow money enough to consolidate the two houses as one and use it for a dwelling. Any temporary renting would not defeat the homestead right. Section 51, art. 16, Const. And whether the renting was intended to be temporary or not was a matter for the jury to determine in the light of all the circumstances.

■ In the case of McDonald v. Clark (Tex. Sup.) 19 S. W. 1023, relied on by the appellant, the facts show that the house in the northeast corner of the lot was continuously rented to Mr. Mattox and he was in actual occupancy of the same from 1885 to 1890, some five years. In virtue of such long-continued rental of the house, and delay in actual occupancy, the trial court concluded that the primary and chief use of that portion of the premises was for the purpose purely of gain and profit. The trial court's conclusion was upheld on appeal as fully warranted. The facts of the present case are different and do not show such unreasonable delay in occupancy or intention of occupancy. The small house was not distinct or separated from the larger one as in the cases of Andrews v. Hagadon, 54 Tex. 571, Oppenheimer v. Fritter, 79 Tex. 99, 14 S. W. 1051, 1052, and Adkins-Polk Co. v. Rhodes (Tex. Com. App.) 24 S. W. (2d) 351. In the present case there was a frontage on the street east and west of 43.3 varas. The two houses 8 feet apart occupied the 43.3 varas fronting the street. There was no fence between the houses. In the Andrews Case, supra, it is recited: "The evidence establishes that for twenty years prior to the execution of the trust deed, the lot in controversy had been separated from the other two by a partition fence." The intention of relinquishment of homestead right was conclusively presumed in that case because of the segregation of the two lots. In the Oppenheimer Case above there was not one lot, but two lots, "with a fence running through the lots." Also in that case is the fact that "the houses had been rented for about 14 years, all the time, when a tenant could be found to take them." Such acts were held conclusive of the intention to separate the premises and to occupy and use only a given portion as a homestead. In the Rhodes Case, supra, the dwelling house stood on one lot, and the garage, wash rack, and driveway were located on a portion of the "adjoining lot" and "were segregated from the family home." There was unequivocally shown in that case use in part for other purposes than homestead. All of these cases cited, and to which others could be added, are in line with the weight of authority to the effect that, if there is unreasonable delay in actual occupancy of the other house on the lot, or the other house is so made distinct and put to use entirely for other purposes such as will stamp it with the character of a place of business or purposes other than a home, such facts will necessarily defeat the homestead claim.

The motion for a rehearing is overruled.