### TEXAS PAC. COAL & OIL CO. v. GUTHRIE.

No. 1593.

Court of Civil Appeals of Texas. Eastland.

Nov. 27, 1936.

Rehearing Denied Dec. 18, 1936.

Oxford & McMillan, of Stephenville, for appellant.

J. A. Johnson and Ernest Belcher, both of Stephenville, for appellee.

FUNDERBURK, Justice.

W. B. Guthrie in the late spring or early summer of 1927 owned and occupied with his wife a residence homestead in Stephenville, Tex. He conducted a filling station business on another lot owned by him, not contiguous to his residence property. At the time stated he leased the filling station business and the lot on which it was situated to one Hurley for a term of one or two years, according to his testimony. He and his wife were at that time in failing health, but not totally disabled. After four or five or six months, Hurley assigned his lease to Hancock, or to Stewart, who in turn assigned to Hancock. The filling station remained under lease and the filling station business was carried on by the said lessees thereon until February 7, 1931, or 1932, when it was taken back by Guthrie.

After the lease to Hurley, Guthrie got a job with the state highway department with headquarters at Canyon, Tex. He continued in said employment for about one and a half years, the nature of his work requiring him to travel upon the highways, in an automobile. He then returned to Stephenville, reoccupied his residence homestead and, beginning about November 24, 1928, engaged in the lumber business in copartnership with H. L. Phillips; said business being conducted upon a leased lot joining the residence lot of Guthrie. Guthrie invested $5,000 in the lumber business, being the entire money capital, Phillips contributing only his services. Both Guthrie and Phillips worked at said lumber business. Guthrie subsequently acquired all interest in said business and sold it out to Clay Lumber Company about October 14, 1929, for approximately $8,000. Following this sale, Guthrie was interested in a hamburger stand in Glenrose, Tex., which was conducted with hired help, Guthrie personally assisting.

In pursuance of special assessments made August 1, 1929, for street improvements, the city of Stephenville issued to Thurber Construction Company certain assessment certificates, at least two of which were assigned to Texas Pacific Coal & Oil Company who brought this suit to recover the assessments therein provided and to foreclose an alleged paving lien on said filling station lot.

Upon a jury trial one issue only was submitted, which was: "Do you find from a preponderance of the evidence in this case that the property involved in this suit was the business homestead of the defendant W. B. Guthrie on July 1, 1929?" The verdict of the jury was, "Yes." From the judgment awarding recovery of the debt, but denying foreclosure of the alleged lien, the plaintiff has appealed.

Plaintiff had a paving lien on said filling station lot if legal notice of the required hearing was given, and if said property was not at the time of the assessment the business homestead of Guthrie.

We shall first consider a cross-assignment of error under which appellee makes the point that the court should not have rendered personal judgment against him for the debt because there was no legal notice given of the hearing upon which

the validity of the assessment depended. The only notice given was the publication of the ordinance making the assessment, in a newspaper in the city of Stephenville, which ordinance as so published was signed by the mayor and counter signed by the city secretary.. The ordinance in part provided: "That the city secretary of the City of Stephenville, is hereby directed to give notice of said hearing by publication in the Stephenville Empire, a newspaper being a weekly paper of general circulation in the City of Stephenville by publishing this ordinance for three (3) successive issues prior to said hearing. The first publication of which is to be made at least ten (10) days prior to date of hearing." Also, "That a hearing shall be given to said owners of abutting property and to all others having any interest in or claim or lien against such property, their agents or attorneys, which shall be held at the city hall in the city of Stephenville, Texas, in the Council Chamber, being the regular place of meeting of the City Council, on the first day of July, 1929, at 8 o'clock, p.m., at which time and place owners of property abutting on said streets and other interested parties, their agents or attorneys, are hereby notified to be and appear," etc.

The decision of this court in Lindsey v. Realty Trust Co., 75 S.W.(2d) 322, is relied upon to show the invalidity of the notice. That case and this, we think, are very different. In the Lindsey Case there was nothing in the published ordinance to show that it was intended as a notice. Here the very terms of the published ordinance show that its publication was a notice and the only notice required or authorized to be given. Just recently we considered this same notice in the case of Bauer v. Texas Pacific C. & O. Co., 100 S. W.(2d) 122, and held it to be sufficient.

█ Appellant by its first assignment of error contends that the court, instead of submitting an issue to the jury, should have instructed a verdict in its favor in response to its motion requesting such action. This, if correct, comprehends the proposition, of course, that the undisputed evidence established conclusively as a matter of law that the filling station lot was not, on July 1, 1929 (the time of the paving assessment), the business homestead of Guthrie. We think, unquestionably, if the statement of the case above made were to be regarded as embracing all the material facts established by the evidence, accepting as true all evidence tending to show that the property was exempt, and rejecting all disputed evidence to the contrary, such facts do show, conclusively, that said property was not the business homestead of Guthrie at the time in question.

However, Guthrie repeatedly testified to the effect that he never at any time intended to abandon his former business homestead; that his bad health and that of his wife was the cause of his ceasing to carry on the filling station business and of his leasing it out; that he at all times intended to resume the same business at the same place when, and if, his health improved sufficiently to enable him to do so.

The question presented for decision may be concretely stated thus: Did such testimony of Guthrie regarding his intention, taken in connection with the facts embraced in the above statement of the case, raise an issue of fact regarding the homestead status of the property and, therefore, one required to be submitted to the jury?

Our investigation suggests that which ever way this question be answered it would appear to be supported by good authority. After careful study we are of the opinion that the decisions of the Supreme Court best fortified by sound reasoning support the conclusion that no issue of fact was raised by the evidence and that the court should have given the requested peremptory instruction for appellant.

█ The constitutional exemption of a homestead in a city, town, or village is dependent upon the use of a lot or lots "for the purposes of a home, or as a place to exercise the calling or business of the head of a family." Const. art. 16, § 51. It is further provided that "any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." Id. In an early case a distinction was noted between a rural and urban homestead, the court saying that, "The *use* of the rural homestead otherwise than as a home of the family is not necessary to preserve such a homestead to the full extent of the area provided by the constitution; while in reference to the urban homestead, the *use* of the home of the family as a residence will not be sufficient to protect and keep alive the exemption of a place for the head of a family to exercise his calling or business, which is detached and separate from the home. The exemption of the place of business, when detached from the place of the home, can only be kept up by use

thereof, and an abandonment thereof will withdraw the exemption therefrom, notwithstanding the lot upon which the home of the family may stand may still be used by the family as a home." (Italics ours) Miller v. Menke's Widow & Heirs, 56 Tex. 539.

On the question at issue, Shryock v. Latimer, 57 Tex. 674, is a leading case. In that case the homestead claimant contended that it had always been his intention "to resume business as a merchant when his financial condition is such as to enable him to do so." The court held, "To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: 1st. The head of a family must have a calling or business to which the property is adapted and reasonably necessary. 2d. Such property must be used as a place to exercise the calling or business of the head of the family." After defining and distinguishing the words "calling" and "business," the court said of the latter: "* * * the actual employment in the given occupation furnishes the only means to determine whether the 'business' exists or not." Most significant, however, in the present inquiry was the declaration:

"Nor can the fact that he [Latimer] contemplated, if he ever became able to do so, to resume the business of a merchant, give to him that character, if it did not exist in fact. * * * The law protects the place of business because it is the place of business, which cannot be unless the head of the family is occupied in a business to which the property is adapted and reasonably necessary. * * * It matters not what the calling or business of a man may be * * * if he does not use the property for the purpose for which the exemption is given, it will be lost. * * * The law does not exempt that which a man might like to use, but is unable to use for want of means; but it exempts that which he does use. * * *

"When a person who owns property exempted from forced sale by reason of its being used for, and necessary to, the exercise of his calling or business, abandons such calling or business, and embarks in some other which does not require the use of such exempted property, in principle such act amounts to an abandonment of the place of business as fully as does the acquisition of a new home operate an abandonment of the old homestead."

That the question before the court in the Shryock Case upon the facts there presented was precisely the same question now before this court upon the facts here presented, is clearly shown by the court's statement of the question thus: "The question here is, can a man, after he has ceased to follow a business for which he has used property, and for the exercise of which business such property was necessary and proper, and therefore exempted, who has embarked in other business, to the successful prosecution of which such property is not necessary, hold such property still exempted from the payment of his just debts, simply because he may have a desire or intention at some future time to re-embark in the business which gave the exemption? This question must receive a negative answer." (Italics ours.)

This case is believed to be decisive of the present one unless it has been, in effect, overruled or modified. It has many times been reaffirmed. Scheuber v. Ballow, 64 Tex. 166, 168; Wynne v. Hudson, 66 Tex. 1, 10, 17 S.W. 110; Bowman v. Watson, 66 Tex. 295, 297, 1 S.W. 273; Willis Bro. v. Morris, 66 Tex. 628, 634, 1 S.W. 799, 59 Am.Rep. 634; Hargadene v. Whitfield, 71 Tex. 482, 490, 9 S.W. 475; Pfeiffer v. McNatt; 74 Tex. 640, 642, 12 S.W. 821; Oppenheimer v. Fritter, 79 Tex. 99, 103, 14 S.W. 1051; Houston v. Newsome, 82 Tex. 75, 80, 17 S.W. 603; Duncan v. Alexander, 83 Tex. 441, 445, 18 S.W. 817; Hill v. Estate of R. B. Hill, 85 Tex. 103, 104, 19 S.W. 1016, 1017; Alexander v. Lovitt, 95 Tex. 661, 664, 69 S.W. 68, 69; Schmick v. Simmons (Tex.Civ.App.) 107 S.W. 568, 569; Bradley v. Janssen (Tex.Civ.App.) 93 S.W. 506, 507; Hull v. Naumberg, 1 Tex.Civ.App. 132, 20 S.W. 1125, 1126; Mays v. Mays (Tex.Civ.App.) 43 S.W.(2d) 148; McDowell v. Northcross (Tex.Civ. App.) 162 S.W. 13, 16; Warren v. Kohr, 26 Tex.Civ.App. 331, 64 S.W. 62, 65; Cooper Groc. Co. v. Peter, 35 Tex.Civ.App. 49, 80 S.W. 108.

In Alexander v. Lovitt, supra, Judge Williams said: "In his testimony Lovitt does not claim that between the time of the sale and lease to Caruthers & Campbell and the levy he was carrying on any business upon the property in controversy. The claim made by him and sustained in the district court and court of civil appeals [67 S.W. 927] is that the exemption was saved by his *intention, existing continuously from the time of the sale and*

*lease to the present,* to resume his business as lumber dealer on the property when he should be able to do so, and after the expiration of the lease." (Italics ours.)

It was held: "In view of the definite suspension of the business in which Lovitt had been engaged, and the execution of a contract which made it impossible for him to resume it upon these premises within any reasonable time, *his intention to resume at some indefinite time in the future* cannot be held to continue the exemption.

"There was a definite cessation both of the business and of the use of the property by a transaction which put it out of Lovitt's power to resume for three years at least, and in the power of the lessees to prevent such resumption for five years. *The mere intention to again engage in the business* could not supply the place of an existing business and the use of the property in its exercise, both of which were essential to the execution." (Italics ours.)

In closing, the court further said:

"The decision in the case of Shryock v. Latimer has never been overruled, nor the principles there stated modified, and it controls this case.

"The facts, taken at their strongest in favor of the defendant in error, conclusively defeat the exemption claimed."

Here it is manifest the Supreme Court, with no power to disturb a fact finding of either the Court of Civil Appeals or the trial court if supported by any evidence, reversed and rendered the judgment. This the court could not have done, except upon the view that testimony of the homestead claimant to the effect that he had an "intention existing continuously * * * to resume his business * * *" did not raise an issue of fact when considered in connection with the other undisputed or conclusively established facts.

In Hill v. Hill's Estate, supra, the court, after detailing facts showing in themselves an abandonment of a business homestead, said: "An intention, under the circumstances, on his part, to make of it a place of business 'as soon as he got able,'—an indefinite time in the future,—is wholly immaterial." Citing the Shryock Case, supra. This case sustaining as it did a finding of abandonment and therefore not determining a question of law, would not be authority on the point under consideration, except for the fact that the trial court had excluded the testimony of the homestead claimant regarding her husband's intention to re-

sume the business, which action was assigned as error. The court said: "We have treated the statement of Mrs. Hill as in the record, and have concluded that it does not affect the issue. Hence, if the court erred in the matter referred to, the error is harmless." Under no theory could the court have held the exclusion of such testimony harmless except that it could not have affected the conclusiveness of the other evidence showing as a matter of law the abandonment of the homestead.

Many others of the cases cited as following the Shyrock Case, as a reading thereof will disclose, have dealt with the issue of homestead abandonment as one of law although the claimant testified to an intention at all times to resume business at the place of the former business homestead. For instance, Schmick v. Simmons, supra, is exactly in point. The court said of the homestead claimant's testimony: "It had always been, he testified, his intention to 'resume and run the wagon yard.'" The court held: "His mere intention at some future time to engage in the business to which the lots were adapted, as said by the Supreme Court, in Alexander v. Lovitt, 95 Tex. [661] 664, 69 S.W. [68] 69, 'could not supply the place of an existing business and the use of the property in its exercise, both of which were essential to the exemption.'"

In addition to the decisions citing the Shryock Case, the following, although not citing that case, agree with it in holding that mere intention to again resume business at the place of a once existing homestead at an indefinite time in the future dependent upon a contingency which may not happen does not perpetuate the previous homestead character: White v. Cotton (Tex.Civ.App.) 72 S.W.(2d) 669; Harston v. Langston (Tex.Civ.App.) 292 S.W. 648; Carothers v. Lange (Tex.Civ.App.) 55 S.W. 580; Hinton v. Uvalde Paving Co. (Tex.Civ.App.) 77 S.W.(2d) 733; Bayless v. Guthrie (Tex.Com.App.) 235 S.W. 843.

We shall discuss but one more case in the present connection. In Hudgins v. Thompson, 109 Tex. 433, 211 S.W. 586, the trial court, in a nonjury case, found as a conclusion of law that there had been no abandonment of a homestead. An appeal was prosecuted without a statement of facts. The Court of Civil Appeals (163 S. W. 659), under the view that it was bound by the finding of no abandonment, affirmed

the judgment giving effect to the homestead exemption. The Supreme Court held, as a matter of law, that there was an abandonment. This could not have been done if testimony of the homestead claimant that he at all times intended to return and reoccupy the property as a home could have affected the question. It was manifestly the duty of the Supreme Court, in the absence of a statement of facts, to presume that there was evidence to support the finding of the trial court, and it could only have reached the conclusion stated because it was considered that there could have been no possible evidence varying the effect of the facts held by the court to be conclusive of the issue of abandonment.

During our investigation, we have not been unmindful of at least three decisions of this court, and of two others upon authority of which our conclusions were based, apparently supporting the proposition that if a homestead claimant once having a homestead admittedly or conclusively shown, testifies that ever since the cessation of occupancy or actual use thereof as a homestead he has at all times had the intention to again resume such occupancy or use as a home, a question of fact is presented which is required to be submitted to the jury. The decisions referred to are: Blanks v. First Nat. Bank (Tex.Civ.App.) 44 S.W.(2d) 393; First Nat. Bank v. Jones (Tex.Civ.App.) 59 S. W.(2d) 1103; Life Ins. Co. of Virginia v. Weatherford (Tex.Civ.App.) 60 S.W. (2d) 883; Farmer v. Hale, 14 Tex.Civ. App. 73, 37 S.W. 164; Wallace v. First Nat. Bank (Tex.Com.App.) 35 S.W.(2d) 1036.

■ We have considered whether as respecting the question here involved a distinction may be made between the abandonment of a residence homestead and a business homestead. Since the business homestead may be changed, and therefore abandoned, with greater facility than the residence homestead, such possible distinction has challenged careful inquiry. But, we are persuaded that it has been settled that no material distinction exists. It is believed that Judge Stayton's opinion in Tackaberry v. City Nat. Bank, 85 Tex. 488, 22 S.W. 151, 152, 299, in no way overruled or modified by subsequent decisions, so far as we can find, is decisive of this point. In that case the court said: "If the family remove from the homestead, with intent never to occupy it again, this is an abandonment of the right to further exemption, unless the removal be mala fide on the part of the head of the family consisting in part or in whole of a husband and wife; and abandonment of a place of business will exist where the head of a family ceases to use the property for a purpose for which the exemption is given, if he have no present intention to resume that or to pursue some other calling or business on the property. Cessation of business, the pursuit of which gives the exemption, has practically the same relation to the right to have the exemption continue as has the removal of the family from the home, and in these cases the intention with which the removal of the family or cessation of business is made determines the further right to exemption. * * * A voluntary discontinuance of business ought to be given the same weight on question of abandonment as is given to a removal from the home; and in the one case, as in the other, the remaining question of fact necessary to be ascertained to determine whether abandonment exists in a given case is that of intention. If the removal of the family from the home, or the voluntary discontinuance of the calling or business be, without intent, in the one case, again to use the property as a home, or, in the other, to resume the old or to pursue some other business on the property, then abandonment exists." See, also, Federal Pet. Co. v. Pittman (Tex.Civ.App.) 65 S. W.(2d) 359.

■ Since questions as to the abandonment of residence homesteads and of business homesteads are governed by the same principles and therefore decisions concerning business homesteads are of equal authority upon a question of the abandonment of a residence homestead as upon a question of the abandonment of a business homestead, we have deemed it necessary to re-examine the basis of said former decisions of this court in view of the seeming conflict with the authorities hereinbefore discussed, the most important of the latter, not having been called to our attention in the former investigations, escaped consideration. From a review of the applicable decisions, it is our conclusion that if said former decisions, and those upon which they were based, are susceptible to the construction that they declare a rule to the effect that when a homestead has once existed and the use and occupancy thereof has ceased, an issue of fact regarding its abandonment can always be raised by evidence that the head of the family at

all times intended again to occupy and use it as a home, such proposition is subject to the exception or modification that a new homestead in fact and law has not been acquired. A homestead may be shown to exist as a matter of law. When the evidence shows the existence of a homestead both in fact and law, the abandonment of any former homestead is thereby likewise shown as a matter of fact and law. This is just as certainly and obviously true as it is that two different homesteads cannot exist at the same time. Regarding the character of evidence required to show the abandonment of a homestead the rule used to be stated that: "An old homestead will not be considered abandoned *before the acquisition of a new one,* except upon clear and conclusive proof of an abandonment with an intention not to return." Scott v. Dyer, 60 Tex. 135, 139; Shepherd v. Cassiday, 20 Tex. 24, 70 Am.Dec. 372; Gouhenant v. Cockrell, 20 Tex. 96; Cantine v. Dennis (Tex.Civ.App.) 37 S.W. 184, 187; Cross v. Everts, 28 Tex. 523, 534; Thomas v. Williams, 50 Tex. 269, 274; Cline v. Upton, 56 Tex. 319, 323.

In such statement, it is clearly recognized that the acquisition in fact and law of a new homestead renders unnecessary and immaterial any evidence of, or inquiry concerning, intention.

In Texas Land & L. Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, 13, the court said:

"The undeniable facts are that Blalock had such interest in the land as homestead rights would attach to, as against every person other than his vendor, to whom balance of purchase money was due; that, with his family, he was occupying the land as his sole home when the trust-deed was executed and money loaned, and so had been for a long time prior to that date; and that the land designated as homestead was not, and had not been, so occupied.

"The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead *in fact and in law,* on which the constitution declares no lien, such as claimed in this case, can exist. Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not *what decla-rations to the contrary the borrower may make."* (Italics ours.)

Suppose the lender in the Blalock Case had undertaken to support the validity of the lien on the ground that Blalock had previously owned and occupied a homestead and that he had many times declared that it had always been his intention to resume its occupancy as his home. There can certainly be no doubt that such evidence would not have raised any issue of fact. No other authority than the Blalock Case would be necessary to support that statement, but it was so expressly decided in the cases of Bayless v. Guthrie (Tex. Com.App.) 235 S.W. 843, and Bell v. Crabb (Tex.Com.App.) 244 S.W. 371. The last case is authority for the proposition that the same evidence which conclusively establishes as a matter of law that one property is homestead also conclusively establishes as a matter of law that any former homestead has been abandoned.

We do not believe that it was the intention of the Supreme Court in Wallace v. First Nat. Bank, 120 Tex. 92, 35 S.W.(2d) 1036, to hold to the contrary, or in any way overrule or modify the decisions hereinbefore discussed and which we deem to be controlling.

In the instant case, regardless of anything Guthrie testified concerning his intentions and the reasons why he leased the filling station, as he says, for one or two years, he further testified to facts showing clearly that he wholly ceased to carry on the business of operating a filling station, that the filling station remained under lease to Hurley, Stewart, and Hancock until at least February 7, 1931, or even February 7, 1932, as he testified in different places that the lease expired at said different times. While the filling station was so leased and being operated by the other parties, and before the paving assessment was levied, he purchased a lumber business and pursued it for over a year on other property which, though rented, was such that the homestead exemption could attach thereto. He was carrying on the lumber business at a different place from the filling station at the very time the paving lien was assessed. He abandoned the lumber business later, not because he had embarked in it temporarily, but because he had found a satisfactory purchaser. We have no doubt that at the time the paving lien was sought to be fixed upon the filling station lot, no creditor could have placed a valid encumbrance upon the leasehold

estate upon which the lumber business was conducted, regardless of any representations that Guthrie could have made to the effect that it was not his business homestead, or that any other property was his business homestead. The obvious, open, visible, and physical facts raised no question of an equivocal use of the property upon which the lumber business was carried on and any other property such as to make Guthrie's testimony as to his intentions material.

We deem it unnecessary to discuss other questions, it being our opinion that the judgment of the court below should be affirmed in so far as it awarded appellant recovery of the debt, but it should be reversed in so far as it denied the establishment and foreclosure of the paving lien, and that judgment should here be rendered for appellant awarding such foreclosure as prayed for, and it is accordingly so ordered.