CHAPMAN, Commissioner of Insurance and Banking, v. FIRST NAT. BANK OF SIPE SPRINGS et al. (No. 6819.)

(Court of Civil Appeals of Texas. Austin. Dec. 8, 1924.) †

1. Bills and notes ⬳518(1)—Party suing on note, consideration for which is denied, must establish consideration by preponderance of evidence, notwithstanding prima facie showing established by note.

The introduction by plaintiff of the note sued on, reciting value received, made a prima facie case showing consideration, shifting the burden to defendant of proceeding to rebut such showing, but the burden of proof upon the issue of consideration remained with plaintiff to establish a consideration by a prepondérance of the evidence.

2. Bills and notes ⬳518(1)—Evidence held to overcome prima facie case of consideration established by note, reciting value received.

Evidence held sufficient to meet burden of overcoming prima facie case of showing of consideration established by introduction in evidence of note sued on, reciting value received.

3. Appeal and error ⬳1010(1)—Findings of trial judge in case tried without jury on issues of fact not reviewable, where there is evidence to support them.

Findings of trial judge in case tried without jury on issues of fact is not reviewable by appellate court, where there is evidence to support them.

4. Appeal and error ⬳1008(1)—Findings of trial judge on issue of fact in case tried without jury will be upheld, unless manifestly erroneous.

Findings of trial judge on issue of fact in case tried without jury will be upheld, unless it is manifestly erroneous.

5. Appeal and error ⬳996—That evidence on which trial court bases finding of fact in case tried without jury admits of different conclusion not ground for reversal.

That evidence on which trial court bases finding of fact in case tried without jury will admit of different conclusion from that which court arrived at held not ground for reversal.

6. Bills and notes ⬳518(1) — Trial court's finding of fact that note executed by bank to another was without consideration sustained.

Trial court's finding of fact in case tried without a jury that the note sued on which defendant executed to the bank of which plaintiff bank commissioner took charge was not supported by consideration held supported by evidence, so that trial court's judgment canceling the note was proper.

7. Pledges ⬳9—Invalidity of principal note for want of consideration necessarily rendered void transfer of collateral notes as security for principal note.

Invalidity of principal note for want of consideration necessarily rendered void transfer of collateral notes as security for principal note.

8. Banks and banking ⬳80(7)—Transfer of notes between two banks, made in contemplation of insolvency of one, held to establish relation of trustee and cestui que trust between two banks.

Where notes were transferred by one bank to another in contemplation of the insolvency of former, the relation established by such transfer was that of trustee and cestui que trust between the two banks, and the payments made on the notes so transferred constituted a trust fund, which the receiver of the insolvent bank was entitled to recover.

9. Banks and banking ⬳80(7) — To recover trust money in hands of insolvent bank it must be traced into particular fund or property.

In order to fix a trust upon assets in the hands of an insolvent bank, held in trust by it before insolvency for the benefit of defendant bank, the trust money or its equivalent must be traced into the particular fund or property into which it went, with at least practical definiteness and certainty.

10. Trusts ⬳372(1)—Presumed that trustee commingling trust funds with individual funds paid out or withdrew his own money.

It is presumed that, when a trustee commingled trust funds with his individual funds,

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
† Received for publication July 20, 1925.

and made payments or withdrawals from the common fund, he paid out or withdrew his own money, leaving the trust money.

**11. Banks and banking ⚖=80(10)—Defendant bank, asserting trust fund, held to have discharged burden showing its existence in fund from which its payment was sought.**

Defendant bank, which asserted that the insolvent bank of which plaintiff commissioner took charge held a trust fund in its favor, being included in a part of the cash balance taken over by the commissioner, *held* to have discharged the burden of proof by showing that the trust fund went into the cash balance of the bank on the date it was collected, and that there remained in the fund more than the amount of the trust fund in the bank on the day it became insolvent and on the day plaintiff took it over for liquidation.

**12. Trusts ⚖=372(1)—Rule stated as to burden of proof in suit to enforce trust against property.**

In a suit to follow trust property and to enforce a trust thereon, the burden of proof in the first instance is on the beneficiary to trace and identify his property, either in its original or substituted form, and, when he has shown that property of the trust is represented in the property sought to be impressed with the trust, the burden is then on the trustee or purchaser with notice to show what his interest is.

**13. Banks and banking ⚖=80(7)—Beneficiary held entitled to recover trust fund out of bank's common fund not shown to have been reduced below trust fund.**

Where, at the time banking commissioner took charge of an insolvent bank, the common fund of the bank was over six times larger than the trust fund deposited therein, the beneficiary *held* entitled to recover the full amount of the trust fund, in the absence of a showing that withdrawals from the fund by the bank did not reduce it below the amount of the trust fund.

**14. Evidence ⚖=75—Presumed that evidence in party's possession, but which he fails to introduce, is against him.**

It is presumed that evidence in possession of a party, but which he fails to introduce, is against him.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by J. L. Chapman, as Commissioner of Insurance and Banking, against the First National Bank of Sipe Springs and another, who interposed a cross-action. From an adverse judgment, plaintiff appeals. Affirmed.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellant.

Smith & Woodruff, of Comanche, for appellees.

BLAIR, J. The commissioner of banking having taken over the property and assets of the Desdemona State Bank & Trust Company for liquidation, filed this suit against the First National Bank of Sipe Springs, Tex., an insolvent bank, and against E. C. Aikens, Jr., its receiver, primarily on a note for the sum of $3,091.49, executed by the said Sipe Springs Bank to the Desdemona Bank, bearing date February 1, 1921, due April 1, 1921, reciting "value received," and bearing two credit indorsements, as follows: "Paid 5/24/21, $700.00, H. H. Simmons"; "Paid 5/25/21, D. F. T. $600.00. H. H. Simmons." He also sued on two other notes, one for the sum of $500, dated at Sipe Springs, Tex., January 1, 1921, due 90 days thereafter, and payable to the order of the First National Bank of Sipe Springs signed by H. C. Nabors; and the other for the sum of $600 dated at Sipe Springs, Tex., December 20, 1920, payable to the First National Bank of Sipe Springs, due March 7, 1921, signed by B. C. Nabors and Lewis B. Williams, and both of which notes were alleged to have been pledged as security for the principal note in suit.

Appellees, in addition to a general demurrer and a general denial, among other defenses, filed a sworn plea of want of consideration for the execution of the principal note in suit. By way of special answer and cross-action it was alleged that, when the principal note in suit was given, the insolvency of the maker, First National Bank of Sipe Springs, was well known, and the probability of its immediate closing was foreseen by the officers and agents of both the Sipe Springs Bank and the Desdemona Bank; that the transfer and assignment of its four notes, aggregating $3,800, to the Desdemona Bank as collateral security for said note was void as constituting an illegal preference by virtue of the United States banking laws; that two of these notes so assigned were the two last declared upon by appellant herein, and one was a note of W. L. Allen, dated at Sipe Springs, January 1, 1921, due July 1, 1921, for $1,400, and the other was a note of H. H. Simmons, dated February 15, 1921, due March 15, 1921, for $1,300, which last note was alleged to have been collected by the Desdemona Bank and the proceeds credited on the principal note in suit as set forth by appellant in his petition; that by reason of such wrongful possession and illegal transfer of these collateral notes the sum of $1,300 collected on the H. H. Simmons note constituted a trust fund; that at all times subsequent to the collection of the $1,300 and prior to the closing of the Desdemona Bank, and at the time the appellant, commissioner of banking, took over the property and assets of said bank for liquidation, there was in cash on hand in the vault of the bank, and in other banks to its credit, sums in excess of $1,300, representing the proceeds of the said Simmons note, from which appellees were entitled to recover of the commissioner the

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

$1,300 as a trust fund, and were entitled to have it declared a prior and preferential claim against the assets of the bank so in his hands for liquidation.

Appellees' prayer was that appellant take nothing by his suit on the principal note, and that it be canceled, and upon their cross-action prayed that the transfer and assignment of the collateral notes be declared null and void as an illegal preference, and for title and possession of them and for judgment against such of the makers as were before the court, and further prayed for judgment against appellant for the sum of $1,300, the amount collected on the Simmons note, and that same be declared entitled to priority of payment by reason of its being a trust fund.

By supplemental petition appellant prayed, in the event it was found that the H. H. Simmons note on which had been collected $1,300 was illegally transferred to the Desdemona State Bank & Trust Company, that he have judgment for the principal, interest, and attorney's fees on the principal note in suit without allowing the credits thereon indorsed.

The case was tried to the court, a jury being waived, and judgment was rendered generally against appellant and for appellees on their cross-action substantially as prayed for. Affecting appellant's right of recovery upon the principal note in suit, among other facts found by the trial judge, was a finding that it was executed without consideration. This finding is attacked by appellant. The following is a substantial statement of all the facts as found by the trial judge on the issue of a want of consideration of the note: The First National Bank of Sipe Springs and the Desdemona State Bank & Trust Company were correspondent banks, and discounted paper for each other. On May 8, 1920, the Sipe Springs Bank rediscounted to the Desdemona Bank a note for the sum of $3,000, executed by A. O. Newman, of date April 29, 1920, and due August 29, 1920, and indorsed by George F. Blethen; the Sipe Springs Bank indorsing without recourse. Shortly before maturity this note was sent to the Sipe Springs Bank for collection, and charged against said bank on the books of the Desdemona Bank. It was not paid on presentation, and a new note for $3,000 was taken on September 16, 1920, due four months after date, payable direct to the order of the said Desdemona State Bank & Trust Company, signed, "Majestic Theatre Company, by Geo. F. Blethen, Manager." This renewal note was forwarded to the Desdemona Bank, and the Sipe Springs Bank charged the note back to the Desdemona Bank. Shortly before maturity of this renewal note it was sent for collection to the Sipe Springs Bank, and the amount of the principal, $80 interest, together with a $11.49 existing overdraft, ag-

gregating $3,091.49, were charged and carried on the books of the Desdemona Bank against the Sipe Springs Bank as an overdraft. The note was sent for collection about February 1, 1921, and was not collected, and was carried as an overdraft on the Desdemona Bank's books until March 8, 1921. On this date the Sipe Springs Bank committed acts of insolvency, and the cashier, foreseeing the fact that the bank must close, communicated with Mr. Steakley, cashier and director of the Desdemona Bank, relative to the situation. Steakley was one of the organizers of the Sipe Springs Bank, and was a director from the time of its organization until January, 1921. Steakley immediately upon receiving this information went to Sipe Springs and interested himself in the matter of the alleged overdraft so carried by the Desdemona Bank against the Sipe Springs Bank. He requested S. D. Pottinger, cashier of the Sipe Springs Bank, to execute the principal note in suit. Pottinger, being uncertain of the legality of his doing so, or his authority for doing so, referred Steakley to the board of directors, who were then in session. Steakley went back where the directors were meeting, and in a short time returned, and told Pottinger that it was all right with the directors for him to execute the note, which he did, signing, "First National Bank Sipe Springs, Tex., by S. D. Pottinger, Cashier." At this time he also transferred the four collateral notes, aggregating $3,800, assigned as security for the principal note in suit. Pottinger never after said time had any information that his execution of the note was not all right with the board of directors. There is no other testimony as to this. Two days later the Sipe Springs Bank went into the hands of the comptroller. The appellees pleaded under oath a want of consideration for the note. The note recites, "Value received." The Sipe Springs Bank maintained possession of the note so sent for collection, and it was in the possession of its receiver, appellee Aikens, on the date of trial of this cause.

The appellant contends on this issue: First, that the note itself imported a consideration, and its introduction in evidence placed the burden upon appellees to show a want of consideration, which burden he contends was not discharged; and, second, that the evidence, independent of the import of a consideration in the note itself, shows a consideration. Article 7093, Vernon's Sayles' Civil Statutes 1914, provides that all written instruments import a consideration. Article 1906, subd. 10, Vernon's Sayles' Civil Statutes 1914, provides that a plea of want of consideration of a written instrument must be sworn to. The Supreme Court, in the case of Newton v. Newton, 77 Tex. 508, 14 S. W. 157, held: "The effect of the sworn plea was not to shift the burden of proof, but merely

to put the consideration in issue," and that "the note imported a consideration, 'and the burden was 'upon the defendants to show that there was none."

[1, 2] We think the introduction of the note in evidence, which recited "value received," made a prima facie case showing consideration, and the burden of proceeding to rebut such prima facie case then shifted to the appellees, but that the burden of proof upon the issue of consideration thus joined still remained with appellant to establish a consideration for the note by the preponderance of the evidence. Goree v. Uvalde Bank (Tex. Civ. App.) 218 S. W. 625. We think the evidence above recited sufficiently met the burden of proceeding cast upon the appellees by the introduction of the note by appellant, and rebutted the prima facie case thus made.

[3-5] That being true, our next question is whether appellant has proved as a matter of law that there was a sufficient consideration for the execution of the note, and that the trial judge's finding of fact on such issue was contrary to the evidence, as asserted in his second contention on this issue. The rule is well settled that the findings of a trial judge, in a case tried before him, a jury being waived, on the issues of fact will not be reviewed by the appellate court, where there is evidence to support such findings. It is also well settled that the finding of the trial judge on an issue of fact, where a jury is waived, will be upheld, unless it is manifestly erroneous, and that to authorize a reversal it is not sufficient that the evidence will admit of a different conclusion from that which the court arrived at. Bird v. Pace, 26 Tex. 488, and many other authorities could be cited. The original transaction of the rediscount of the note by the Sipe Springs Bank to the Desdemona Bank, on May 8, 1920, for the sum of $3,000, executed by A. O. Newman, and indorsed by Geo. F. Blethen, due August 29, 1920, cannot furnish the consideration, for it is undisputed that this note was indorsed by the Sipe Springs Bank without recourse. There is neither pleading nor testimony showing any collateral agreement on the part of the Sipe Springs Bank to pay this note at maturity, if the maker or indorser failed to pay it. The note given in renewal of the said Newman note was made payable direct to the order of the Desdemona Bank. There is no pleading or evidence showing liability on the part of the Sipe Springs Bank on this note, or that any collateral agreement was made as to its payment, and the Sipe Springs Bank was in no way a party to it.

[6] The only other evidence of a consideration for the note contended for in this connection is that by inference the First National Bank of Sipe Springs had been negligent in collecting the note, and that by reason of such negligence was under obligation to pay the note, and that in order to satisfy such liability it was agreed that the Majestic Theatre note was to be transferred to the Sipe Springs Bank, and that it execute the note in suit and give the collateral thereto as discharging the obligation thus incurred. This contention cannot be sustained. In the first place, there is no testimony to support such theory or inference. The trial court was not requested to find as to such issue of fact. In fact, appellant admits that, if he had been requested to do so, in all probability he would have found against the contention, and correctly so, for there is no testimony or contention by the Desdemona Bank or Steakley, its representative, that the Sipe Springs Bank failed to use diligence in presenting for collection the note forwarded it. In the second place, to sustain such contention would be to sustain an inference that might be drawn from the evidence that, because the Sipe Springs Bank kept the note for a considerable period of time, and did not collect it, it was negligent, and therefore contrary to the way the court found, which would be violative of the rule announced in the Bird Case, supra, that in order to set aside the findings of fact by the trial judge it is not sufficient that the evidence will admit of a different conclusion from that arrived at. In fact, the whole transaction appears to have been amicably settled between the parties without dispute, and bears out the contention of appellees that the execution of the note was an effort to confer a preference upon the Desdemona Bank. The trial court's finding of fact that there was no consideration for the principal note in suit is therefore sustained, and the judgment canceling the note is affirmed. It follows from this conclusion that the trial court's judgment awarding the appellees a recovery against the makers of the collateral notes who were properly before the court should also be affirmed. Also the judgment requiring the banking commissioner to deliver into the registry of the court the Allen note, assigned to secure the principal note in suit, should be affirmed, and the judgment requiring the receiver of the Sipe Springs Bank to deliver into the registry of the court the $3,000 note sent by the Desdemona Bank to the Sipe Springs Bank for collection, and retained by it after execution of the principal note in suit, is also affirmed.

[7, 8] Having thus disposed of the judgment of the trial court as affecting appellant's right of recovery on the principal note in suit, the remaining questions for our determination relate to that portion of the judgment awarding a recovery on appellees' cross-action for the amount collected by the Desdemona Bank on the H. H. Simmons note assigned as collateral security. From our conclusion that the principal note in suit is void for want of consideration, it necessarily follows that the transfer of the collateral notes

as security for it is for the same reason void. In addition, the trial court found that the transfer of the collateral notes was void, because made in contemplation of insolvency. This latter finding and judgment of the trial court are admitted by appellant to be correct. It is also admitted that the $700 credit, dated May 24, 1921, and the credit for $600, dated May 25, 1921, as indorsed on the principal note in suit, represent payments by H. H. Simmons on his note wrongfully in the possession of appellant by reason of the illegal transfer of it. From these facts the trial court found that the $1,300 so collected on the Simmons note constituted a trust fund which the receiver of the Sipe Springs Bank was entitled to recover of the banking commissioner who had taken over the Desdemona Bank, and rendered judgment therefor for the sum of $1,288.51; the amount of the judgment being arrived at by subtracting from the $1,300 collected by the Desdemona Bank on the H. H. Simmons note an overdraft of $11.49, which the Desdemona Bank legally held against the Sipe Springs Bank at the time the note in suit was executed. This finding and judgment are correct, for it is without question that the transaction as above related established the relation of trustee and cestui que trust as between the litigant banks. Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85.

[9] Appellees admit that they are not entitled to a priority payment of the $1,300 trust fund out of the items of cash due from other banks and collections in transit, having made no proof that the trust fund ever went into these items, and that therefore the rule announced by the Supreme Court in the case of Bank v. Weems, supra, applies. This rule as applied to the instant case is that, in order to fix the trust upon any assets in the hands of the insolvent Desdemona Bank, held in trust by it before insolvency, the trust money or its equivalent must be traced into the particular fund or property into which it went, with at least practical definiteness and certainty. Dollar v. Lockney Supply Co. (Tex. Civ. App.) 164 S. W. 1076; Board of County Commissioners v. Strawn, 157 F. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; In re Stewart (D. C.) 178 F. 463; Brennan v. Tillinghast, 201 F. 609, 120 C. C. A. 37; 3 R. C. L. p. 628, par. 268; In re M. E. Dunn & Co. (D. C.) 193 F. 212; Empire State Surety Co. v. Carrol County, 194 F. 594, 114 C. C. A. 435.

[10] The remaining question is whether appellees have sufficiently identified or traced the $1,300 collected, or its equivalent, into the cash balance of $8,021.07, shown to have been in the vault of the Desdemona Bank July 20, 1921, the date the commissioner of banking took said bank over for liquidation, so as to entitle them to a preference claim for pri-

ority payment to the extent of the amount of the trust fund out of said cash balance.

On this issue the trial court found that the Desdemona State Bank & Trust Company was declared insolvent and placed in the hands of the commissioner of banking on July 20, 1921, and that there came into the hands of said commissioner of banking, in cash, cash due from other banks and collections in transit, funds in excess of the amount collected by the Desdemona Bank on the H. H. Simmons note. The only evidence introduced supporting this finding was a statement of the financial condition of the Desdemona Bank & Trust Company on July 20, 1921, the date the commissioner took it over for liquidation, showing among the resources of the bank, and concerning this issue, the following three items: Cash on hand, $8,021.07; due from other banks, $7,566.59; collections in transit, $353.25. It is not disputed that the $1,300 collection went into cash on hand in the bank on the dates of its collection. No proof was made showing the daily cash balances of the Desdemona Bank from the dates of May 24, 1921, and May 25, 1921, the time when the $1,300 trust fund was commingled with the cash on hand of said bank, to July 20, 1921, the date the banking commissioner took it over for liquidation and found a cash balance of $8,021.07 in the vault of said bank. It is in this particular that appellant contends that appellees have failed to meet and discharge the burden of proof cast upon them to sufficiently identify or trace the trust fund. Appellees insist that, having shown that the trust fund was deposited in the bank, and further that at the time the bank failed and at the time the commissioner of banking took over the properties and assets of the bank there was a sufficient fund on hand in the vault of the bank to pay the trust deposit, they should be held to have made a prima facie case, since it must be presumed that the trustee had not wrongfully misappropriated the trust fund. There is a well-settled legal fiction or legal presumption that, when a trustee commingles trust funds with his individual funds, and makes payments or withdrawals from the common fund, he is presumed to have paid out or withdrawn his own money, leaving the trust money. Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; Board of Commissioners of Crawford County v. Strawn, 157 F. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1105, and cases there cited; Crawford Co. v. Patterson (C. C.) 149 F. 229; Woodhouse v. Crandall, 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; Richardson v. New Orleans Debenture Redemption Co., 102 F. 708, 42 C. C. A. 619, 52 L. R. A. 67; Knatchbull v. Hallett, L. R. 13 Ch. Div. 696; L. R. A. 1916C, p. 21; and many other cases might be cited on this proposition, for it is now practically the universal law of all states of this Union.

[11] Appellant insists that such legal fic-

tion or presumption does not arise, unless and until it is shown that the common fund had never been reduced to an amount less than the trust fund, and that the burden was upon appellees in this case to show this fact before they were entitled to recover. We do not sustain this contention. It was not shown that there were any payments made from this cash balance after the trust fund went into it. It might be that we should take judicial notice that the cash of a going bank would in the very nature of the business be the fund from which withdrawals were necessarily made to meet the expenses of the bank. Likewise, we might assume that other moneys were, in the due course of business, in all probability, added to this cash balance from time to time. Assuming these facts to be true, we think appellees have discharged the burden of proof required of them, that their trust fund was a part of the cash balance taken over by the commissioner of banking, by showing that the said trust fund went into the cash balance of the bank on the date that it was collected, and that there remained in said fund more than six times the amount of the trust fund in the vault of the bank on the date it became insolvent, and on the date the banking commissioner took it over for liquidation; for in this they are aided by the legal presumption or fiction that the trustee would not pay out their trust fund, and that, if any payments were made from the common fund, they were made from the trustee's own money.

[12] The rule as to the burden of proof in cases of this character is set forth in 39 Cyc., at page 532, par. II, as follows:

"Burden of Proof. In an action to follow trust property and to enforce the trust thereon, the burden of proof in the first instance is on the cestui que trust to trace and identify his property either in its original or substituted form; but when he has shown that property of the trust is represented in the property sought to be impressed with the trust, the burden is then on the trustee or purchaser with notice to show what his interest is."

The weight of authority seems to support the above text, although the authorities cited in note 90 by the text-writer, in support of this conclusion, may, in some respects, be against the weight of authority.

In the case of Spokane County v. First National Bank, 68 F. 979, 16 C. C. A. 81, it was held that "if a bill to recover a deposit of trust money from an insolvent bank and its receiver should allege that, at the time the bank failed and the receiver was appointed, there was sufficient money on hand to pay the trust deposit, or at least a part of it, it is probable that a court would hold it prima facie good, as it might lawfully presume that the bank had not wrongfully misappropriated the trust fund."

In the case of Woodhouse v. Crandall, supra, being a case where the facts show a bank had mingled trust funds with its own funds, and that at a subsequent date, when it went into the hands of a receiver, there remained in the bank more than enough to pay the trust claim, and although there was in such case evidence of encroachments by the bank upon the common fund, yet we find the following language used in disposing of the case:

"The only question here is what is a sufficient identification, and the rule is, that if it can be shown the money is in a specified place, equity will take out of that place enough money to satisfy the trust. In this case, we think that the trust fund was traced and identified by legitimate evidence and rules of law for ascertaining its identity."

The court in this case also quoted with approval the rule announced in Re Hallett, L. R. 13 Ch. Div. 696, which rule was also adopted by our Supreme Court in the case of Bank v. Weems, supra, which is in effect that, where a bank holds money in trust and commingles it with its own, cestui que trust can follow it and has a charge on the balance in the banker's hands, notwithstanding the commingling of the funds; the presumption being in such case that the money drawn out of the common fund was the money of the bank rather than that it had disregarded its trust and violated its duty.

The Supreme Court of the United States, in the case of Central Nat. Bank v. Conn. Mut. Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693, held that, where money was placed in trust in the vault of a bank, it is presumed that the trustees drew out their own money first, and that what remained belonged to the trust fund. In this case we find the court going still further and holding—

"that, so long as trust property can be traced and followed into other property into which it has been converted, the latter remains subject to the trust, and that if a man mixes trust funds with his own, the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own, are established doctrines of equity and apply in every case of a trust relation, and to moneys deposited in a bank account, and the debt thereby created, as well as to every other description of property."

In the case of Board of Commissioners v. Patterson (C. C.) 149 F. 229, supra, it is held:

"This rule is amplified, also, to the effect that, if the trustee has mingled a trust property with his own, he will be deemed to have used his own rather than the trust property, and so to leave the remainder under the trust; and that is sufficient identification for the owner."

And further:

"We discover, therefore, that, in the first place, identification of a trust fund is complete, where moneys are found in the hands of the trustee who has mingled his own funds with the trust fund, and that the remaining fund,

if not in excess of the trust fund, will be deemed to be that portion of the trust fund which the trustee has not touched, because belonging to the trust."

In the case of Smith v. Mottley, 150 F. 266, 80 C. C. A. 154, it is held:

"In the absence of any proof to the contrary, the reception of the funds being so near to the assignment by the bank, it may be presumed that the assets which came to the hands of the trustee were augmented by the appropriation of the proceeds of the check. If it were not so, the burden was on the trustee to prove it; or, if not augmented to the whole amount of the check, then to what amount they had been lost out. It is shown that three times the amount of this fund remained in the bank to the time of the assignment and came to the trustee. The burden of showing that his property has been wrongfully mingled in a mass of the property of the wrongdoer is upon the owner; but, when this is done, the burden shifts to the wrongdoer. It is for him to distinguish between his own property and that of the innocent party."

Reference is here made to the authorities there cited.

In the main, appellant and appellee cite the same authorities to support their respective contentions as to this particular question; appellant quoting the following from Continental Nat. Bank v. Weems, supra, and language of similar purport from other cases as supporting his contention:

"Where the trustee kept the fund separate, and the original money was capable of being identified, there never was any question. * * * It is where the trustee has mingled the trust money with the mass of his other funds that the difficulty arises. It may be that when the entire mass is once paid away, the right to claim a trust in any money or property is forever lost. But if, as in the present case, throughout, all the trustee's dealings with the funds so mingled together, he keeps on hand a sufficient sum to cover the amount of the trust money, we think it capable to demonstration that the trust should attach to the balance that is found to remain in his hands."

We have taken the occasion to examine the facts proved in each of these cases quoted from by appellant, and have found that in each instance it was proven that at all times after the commingling of the trust fund into the particular fund sought to be charged with it that the common fund represented a larger sum than the trust fund; or it was shown that at some particular time it did not contain the amount of the trust fund; and we must therefore conclude that they are not authority for the question here raised, since the language used by the courts in those cases can only be construed in the light of the facts therein discussed. In other words, a different question is raised by a different state of facts. We have also examined the facts proved in the cases above quoted by us in support of our holding with the contention by appellees on this issue, and find that at least some of them present facts practically identical with the facts of this case; that is, the proof showed that the trust fund went into a particular fund of the bank, and that at a subsequent date after the bank had become insolvent there was shown to have passed into the hands of the receiver a larger sum than the trust fund, and in these cases the court held such proof sufficient to identify the trust fund. See Woodhouse v. Crandall, supra.

In this connection it was held in the case of Board of Water Commissioners v. Wilkinson, 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493, that, where the trust money has been mingled and used along with the other deposits in the business of the bank, so much of the cash in hand which passed into the possession of the assignee of the bank, where it is less in amount than the balance to the credit of the trust fund deposited, is presumed, in the absence of proof to the contrary, to be a part of the trust fund.

In the case of Wallace v. Stone, 107 Mich. 190, 65 N. W. 113, it is held that, where the trust fund is mingled and indiscriminately used with the general deposits of the bank, "after the suspension of the bank and the appointment of a receiver of its property, the receiver takes it charged with that trust, and is bound to pay it over to the owner, where it does not appear that at any time after making the collection the bank had on hand less cash than the sum collected."

The language used in these cases seems to indicate conclusively that the case of cestui que trust is established by showing that the trust fund went into a particular fund of a going bank, from which there were withdrawals, unless the legal presumption above announced is overcome by testimony of the trustee showing a contrary state of facts. In fact, all the cases discussing this presumption or legal fiction hold that it will not stand against proof.

[13, 14] The Desdemona Bank's books were in the hands of appellant. From them he could easily have ascertained if the common fund into which the trust fund went was ever reduced below the amount of the trust fund by withdrawals in the regular course of business, in which event the trust fund would have been dissipated to that extent, and by the introduction of such proof he would have overcome the prima facie case made by appellees, and would have met and complied with the rule adopted by the weight of authority which burdened him with showing what the interest of the trustee was in the common fund. The proof in this case did not show that any withdrawals were made from the common fund after the trust fund became a part of it. In absence of such proof, it cannot be said that any were made. If it be our duty, by reason of the nature of the business and common fund dealt with, to assume that such withdrawals were necessarily made, ap-

pellees should be held to have made a prima facie case by showing that this common fund which passed into the hands of the commissioner of banking upon the bank's becoming insolvent was more than six times the amount of this trust fund; for in this they are aided by the presumption that the trustee had at no time paid out of this common fund to such an extent that it would encroach upon the trust fund. Appellees having made such prima facie case, it was then incumbent upon the appellant, who stood in the shoes of the insolvent trustee, to show that, because of withdrawals, if any, by the trustee, he had reduced the common fund below the amount of the trust fund, and it would be held to have been dissipated to the extent of the reduction. Appellant having this proof in his possession, and having failed to introduce it, it will be presumed that it was against him, and the case should be affirmed.

It is therefore ordered that the judgment of the trial court be affirmed.

Affirmed.