## L. E. WHITHAM & CO. v. KEMP et ux.
### No. 7909.

Court of Civil Appeals of Texas. Austin.
Nov. 29, 1933.

Milburn E. Nutt, of Wichita Falls, for appellant.

W. A. Anderson, of San Angelo, for appellees.

BAUGH, Justice.

Appellant, a partnership composed of L. E. and R. M. Whitham, sued appellees on paving certificates issued to it by the city of San Angelo for paving the street in front of appellees' property in said city and for a foreclosure of their paving lien. Appellees defended only against foreclosure of the lien on the ground that said property was their homestead. Trial was to the court, who found, after a hearing, that all of said property was appellees' homestead, denied appellant a foreclosure of the asserted lien, but gave it judgment for its debt. From this judgment the paving company has appealed.

 The single issue here presented is whether lot 14 and the adjoining one-half of lot 15, in block 14 of Frary addition to San Angelo, was a part of the homestead of appellees on July 7, 1931, the date on which appellant's lien, if any it had, attached. This question was a fact issue. Jones v. First Nat. Bank (Tex. Com. App.) 259 S. W. 157; Schultz v. Schultz (Tex. Civ. App.) 45 S.W. (2d) 312; 22 Tex. Jur. 108, 111. The court having found the issue against appellant, we must view the evidence in the most favorable light in support of that finding. When so viewed, the following material facts appear:

In 1921 G. W. Kemp acquired lot 13 and the adjoining one-half of lot 12, of said block 14, fronting 75 feet on Pulliam street in San Angelo, from C. C. Green, and which will hereafter be designated as the Green place. He occupied this property with his family continuously thereafter as his homestead, until April or May, 1930, when the house and most of their furniture therein were destroyed by fire, except the back porch and one room. Mrs. Kemp and their daughter moved into a small furnished apartment nearby, and Mr. Kemp continued to sleep for the most part in the room left standing, where their remaining furniture was stored. Kemp collected $1,600 insurance on the loss, and on June 24, 1930, purchased from Anna Cline with $1,000 of said insurance money lot 14 and the adjoining one-half of lot 15 of said block 14, hereafter called the Cline place, facing Pulliam street and adjoining the Green place. On the Cline property was situated a four-room house with separate water, lights, etc., then occupied by a tenant of Miss Cline. These two places were inclosed by a continuous outside fence and separated by a fence between. Title to the Cline property was taken in the name of Mrs. Kemp, but it was purchased for the avowed purpose of becoming a part of their homestead. The tenant was so notified, and required to move out of said house about July 1, 1930. The Kemps thereupon removed the fence between the places in the back, and the rear of both places was used by them for a chicken yard, cow lot, and perhaps gardening and orchard purposes. The records of the water and light company showed that thereafter one Spacek occupied the Cline place from September 15, 1930, to February 27, 1931, and that Ritter occupied it from February 27, to May 5, 1931. The rents charged these tenants, if any, were not shown. On August 3, 1931, Kemp moved his remaining furniture and household goods from the burned house on the Green place into the house on the Cline place, and that night the Cline house burned. Thereafter, on August 16, 1931, Kemp and wife designated all of said lots as their homestead; and in October, 1931, executed a mechanic's and materialman's lien on said property for the erection of a home on the Cline place, which was erected thereon and occupied as such about January 1, 1932, and continuously since that time by the Kemps as their home.

Kemp testified that, when the agents of appellant, prior to July 7, 1931, requested him to sign a contract for the paving in front of said property, he declined to do so, and then informed them that all of said property was his homestead, and that he then intended to build a new home on the Cline property because the small residence thereon was not fit for his home and that his family would not live in it. The evidence also showed that Kemp sometimes slept in the residence on the Cline place, when it was vacant, kept his garden tools and other equipment there; that he used for domestic purposes the back of both places; that his wife, while living in the nearby apartment after the first fire, hung out her laundry on the Cline place, and was there practically every day for one purpose or another. It also showed that from time to time after its purchase in June, 1930, the Kemps negotiated with contractors, carpenters, or lumbermen concerning the erection of a new house on the Cline place, by tearing down the house thereon, or by rebuilding same, or by using the lumber from both places; but that they were not able to finance such project until the fall of 1931.

 Appellant admits the homestead character of the Green place, but denies that such exemption applied to the Cline place on July 7, 1931, relying chiefly upon the fact that it was not so occupied at that time, but was a separate residence and occupied by tenants both before and after that date. Clearly, we think, its contention cannot be sustained as against the trial court's finding of fact to the contrary.

 The renting of such property, if the homestead character attached to the Cline

property when purchased in 1930, was such that the trial court was clearly authorized to find that it was temporary as that term is used in the Constitution and the statutes. Const. art. 16, § 51; article 3833, R. S. 1925. It is not absolutely necessary for the owner to actually occupy the premises as a home to be entitled to the homestead exemption, if the intent to do so is clear and manifest, and is coupled with unmistakable acts that evidence such purpose. Brown v. Logan (Tex. Civ. App.) 7 S.W.(2d) 189; Broadland v. City Nat. Bank (Tex. Civ. App.) 15 S.W. (2d) 112; Jolesch & Chaska Co. v. Hampton (Tex. Civ. App.) 297 S. W. 271; 22 Tex. Jur. 59. The intention to do so in the instant case is made clear, we think, by the surrounding facts, circumstances, and the statements of the Kemps at the time of the purchase of the Cline place. While the erection of the new home was delayed because of inability to finance it, the conduct of appellees, both before and immediately after the paving project was started, was such as the trial court could properly find to be unmistakable acts evidencing the prosecution by appellees within a reasonable time of such intent on their part to make all of said property their homestead. See Scottish American Mtg. Co. v. Milner (Tex. Civ. App.) 30 S.W.(2d) 582, 585.

We have read carefully the cases relied upon by appellant, Blum v. Rodgers, 78 Tex. 530, 15 S. W. 115; Benzel v. Commercial Nat. Bank (Tex. Civ. App.) 1 S.W.(2d) 695; Harston, Sheriff v. Langston (Tex. Civ. App.) 292 S. W. 648, and Walker v. Dailey (Tex. Civ. App.) 290 S. W. 813, the last two of which were written by this court, but do not think they are here applicable. The principles of law therein announced are well settled; but in each of those cases the issue of abandonment of homestead rights formerly existing was clear; or the property was so set apart from other homestead property and so used as to manifest a clear intention with reference thereto. We deem it unnecessary to elaborate further upon the homestead rights above referred to, as such questions have been repeatedly adjudicated. An elaborate discussion of same by the Supreme Court is found in Andrews v. Security Nat. Bank, 121 Tex. 409, 50 S.W.(2d) 253, 83 A. L. R. 44.

We think the facts and circumstances shown were clearly sufficient to establish the intention of appellees prior to July 7, 1931, to make the property in question a part of their homestead, and that appellant's agents were so advised at that time; that the conduct of appellees, both before and after July 7, 1931, constituted acts and a use of said property in such manner as to carry out such intent within a reasonable time; and that such intent was in fact so carried out. The evidence as to these matters was sufficient to sustain the trial court's findings. The judgment is therefore affirmed.

Affirmed.