### EAST TEXAS REFINING CO. v. HELVIR OIL CO.

#### No. 11605.

Court of Civil Appeals of Texas. Dallas.

April 13, 1935.

Rehearing Denied May 11, 1935.

Taylor, Storey & Dotson, of Longview, for appellant.

Allen & Allen, E. G. Moseley, and Andrew Patton, all of Dallas, for appellee.

JONES, Chief Justice.

In a suit instituted by appellee, the Helvir Oil Company, against appellant, East Texas Refining Company, appellee was awarded a judgment in the sum of $1,508.93, with interest at the rate of 6 per cent. per annum from date of the judgment. Appellant has duly perfected an appeal to this court, and the following are the necessary facts:

On March 3, 1932, appellee, a domestic corporation, owned an undivided interest in a gas lease covering 14.17 acres of land out of the Willis-Smith 43-acre tract on the J. S. Carouthers survey in Gregg county; on March 3, 1932, there were two producing oil wells on such lease, and on or about said date, appellant, a domestic corporation with its principal office in Dallas, began to receive for its refinery the oil from said lease, and on or about May 3, 1932, there was due appellee the sum of $1,508.93, and its part of said oil; that prior to May 3, 1932, appellant had declined to pay this amount, because of some alleged defect in appellee's title, and after May 3, 1932, appellant declined to pay the amount of said oil run to appellee, on the alleged ground that appellee had transferred the claim for the oil runs to F. O. Akin, whose home is in the state of Iowa, but who is an officer in a corporation that owns the major interest in the lease in question.

Mrs. Helen R. Hudson, wife of G. T. Hudson, owned all shares of stock in appellee company, except two or three shares, one owned by R. M. Waskom, another by his wife, Dulcie Waskom, and perhaps one share owned by another person. R. M. Waskom was president, Dulcie Waskom was vice president, and Helen R. Hudson secretary-treasurer. G. T. Hudson, at the times in question, owned no interest in appellee, and Mrs. Hudson was the managing head of the appellee company.

A corporation named Hawkeye Petroleum Company owned the larger interest in the lease in question, and Mrs. Helen R. Hudson concluded that, either appellee should sell its interest in the lease to the Hawkeye Petroleum Company, of which F. O. Akin appears to own the controlling stock, or buy out the interest of Hawkeye Petroleum Company. For the purpose of negotiating a sale to the Hawkeye Petroleum Company, or a purchase of such company's interest, G. T. Hudson, about May 1, 1932, traveled to Iowa to see F. O. Akin in reference thereto. His instructions from Mrs. Hudson were that, if the property of appellee was to be sold, to try to secure the sum of $35,000, and in no instance to consider a proposition under $20,000 for appellee's interest in the lease. No authority was given at this time by appellee's board of directors, either to sell appellee's property, or to purchase the property of the Hawkeye Petroleum Company. The testimony both of G. T. Hudson and Mrs. Helen R. Hudson is to the effect that he was not to consummate a sale of the property, but merely to secure a proposition and submit it to Mrs. Hudson. As a result of this negotiation in Iowa, Hudson agreed to sell the interest of appellee in the lease for $20,000, and to try to secure the permission of Mrs. Hudson to include the claim for the past oil runs in this sale. When Hudson returned from Iowa, he did not report to Mrs. Hudson that he promised to attempt to secure her consent to include in this consideration of $20,000 the claim for the past oil runs, but reported to her only that the lease could be sold for this sum of money.

A special meeting of appellee's board of directors was held in Dallas on May 3, 1932, after due notice to the stockholders. At this meeting, the following resolution was passed: "Resolved: that Helen R. Hudson, Secretary-Treasurer of the corporation, and R. M. Waskom, President, be and they are hereby authorized, empowered and directed to execute, attest and deliver all necessary instruments of writing in connection with the assignment of an oil and gas lease owned by the Helvir Oil Company on the following described property (here follows a description of the lease), said assignment to be made to F. O. Akin for and in consideration of the sum of $——, cash."

Frank Condon was the duly authorized representative of F. O. Akin at Longview, Gregg county, Tex., and G. T. Hudson, on or about May 5, 1932, went to Longview, in order to consummate the sale of the lease to Akin for $20,000. The sale of appellee's interest in the lease was consummated at this meeting to the extent that an assignment of the lease, duly executed by R. M. Waskom, as president, and attested by Mrs. Helen R. Hudson, as secretary-treasurer, was delivered by G. T. Hudson to Condon, as agent for Akin, and the $20,000 consideration represented by two checks, one for $6,666.66 and the other for $13,333.33, were delivered to G. T. Hudson. The smaller check was cashed in Longview by Condon and, after certain deductions were made, in order to clear the title, to appellee's interest in the lease, by the payment of an outstanding lien indebtedness, the remainder of the proceeds of this check was delivered, in the form of a check, to G. T. Hudson. At this meeting, the following letter was signed by Hudson, and delivered to Condon:

"Longview, Tex., May 5, 1932.
"East Texas Oil & Refining Company,
"Dallas, Texas.
"Gentlemen:
"Helvir Oil Company, by assignment dated May third, 1932, has conveyed to F. O. Akin all its right, title and interest in and to its oil and gas lease covering 14.17 acres of land out of the Willis-Smith 43 acre tract on the J. S. Carouthers Survey, Gregg County, Texas.
"You are hereby authorized to pay to the said F. O. Akin, or order, for all the oil you have run from said wells. It being our understanding that you have been running the oil from and including March 9th, 1932, to date. You are instructed to make payments for all oil runs from this property to Mr. Akin, regardless of what time you connected with the wells thereon.
"Yours very truly,
"Helvir Oil Company,
"By G. T. Hudson, Superintendent."

Hudson testified to the effect that at the time he did not have the power to execute this instrument. The minutes of the resolution adopted by appellee's board of directors on May 3, 1932, was in the hands of Condon at this time, and no authority is therein given to transfer the claim in question.

When Hudson told Mrs. Hudson of the assignment of the lease, also of the letter he had executed, she became very angry and said she would not permit the claim of the previous oil runs to be included in the assignment, and threw the checks on the

floor. G. T. Hudson retrieved them and unsuccessfully attempted next day to cash same, in a Dallas bank, and finally on his own accord went to Iowa and, through the partner of Akin secured a draft for the amount of the checks. When this payment was made, Akin or his agent knew that appellee would not include the claim for the prior oil runs in the $20,000 consideration. Mrs. Hudson, on May 9, 1932, wrote appellant the following letter: "On or about the date of May 5th I assigned to Mr. Akin of Hawkeye Petroleum Co. 9/32 interest of the Helvir Oil Co. of Willis Smith Farm Nos. 1 and 2 wells. Up to the date of assignment, all oil runs that has accrued from the above mentioned wells, No. 1 & 2 of Willie Smith farm, Please make payments directly to Helvir Oil Co., 5446 Merrimac Street, Dallas, Texas.".

Appellant declined to make payment to appellee, and the suit to recover the value of the oil runs was instituted.

The suit instituted by appellee, as shown by the petition, is an action to recover from appellant the value of the oil runs received by appellant prior to the assignment of the lease to F. O. Akin. The defense to this suit, as shown by appellant's answer, is that G. T. Hudson, who negotiated the transfer of the Helvir Oil Company lease, had either actual or apparent authority to transfer the lease and claim represented by the previous oil runs, and that such transfer was made by Hudson, acting for appellee; that if G. T. Hudson did not have either actual or apparent authority to transfer the value of the prior oil runs, his act in so doing was ratified by appellee; also, that appellee's conduct, subsequent to the transfer of the lease and oil runs in acquiescing in the sale and in receiving the consideration, estopped it to deny the authority of G. T. Hudson in the premises. The allegations in the answer in respect to these questions are full and complete, but it is not necessary further to state the substance of such allegations. Appellee did not, by a supplemental petition, reply to the answer filed by appellant.

After a trial to the court of the case on its merits, the judgment above described was entered. At the request of appellant the court filed rather meager findings of fact, but on further request of appellant, and in answer to a number of interrogatories propounded by appellant to the court, as a basis for findings of fact, the court filed exhaustive findings of fact, which, if supported by evidence, in respect to matters material to the judgment, authorized the judgment entered.

In the original findings of fact, the value of the oil runs in question is placed at $1,508.93, the sum for which the judgment was entered. The court, in the original findings, also found in effect that G. T. Hudson was a special agent of plaintiff, Helvir Oil Company, and had no authority to convey real property, or to assign claims as representative of said company; and that F. O. Akin, purchaser of the lease, as well as appellant, knew that G. T. Hudson was only such special agent on May 5, 1932. The court further found that appellee never executed any assignment or conveyance for the value of the oil runs through its officers, or authorized agents and representatives.

In the additional findings of fact, on the matters material to the validity of the judgment, it is specifically found by the court: (1) That G. T. Hudson was authorized to negotiate as broker with F. O. Akin in respect to the sale of the oil and gas lease in question, but had no authority to make any binding agreement on the Helvir Oil Company with respect to the terms thereof; (2) that G. T. Hudson did make a verbal agreement with Frank Condon, agent of F. O. Akin, on May 5, 1932, to include in the sale of the oil and gas lease the oil runs involved in this suit; (3) that at the time of such agreement to include the oil runs, no officer of the Helvir Oil Company knew of such agreement and had not authorized such transfer; (4) that G. T. Hudson had apparent authority to deliver the oil and gas lease, but had no authority to make any conveyance or assignment of any property or interest belonging to or in which the Helvir Oil Company had an interest; (5) that the authorized officers of the Helvir Oil Company knew that G. T. Hudson had purportedly sold the oil runs a few days after such purported sale, but before the checks given to appellee were cashed in Iowa by the partner of F. O. Akin, appellee, through Helen R. Hudson, notified Frank Condon, agent of F. O. Akin, of the lack of authority of G. T. Hudson to make such transfers; (6) that there was neither ratification nor estoppel on the part of appellee of the unauthorized act of G. T. Hudson in attempting to transfer the value of the prior oil runs.

While these findings of fact on material issues on this appeal, except as to the value of the prior oil runs, were strongly controverted by evidence offered by appel-

lant, still they are supported by substantial evidence, especially that of Mrs. Helen R. Hudson, who testified in open court, and her manner of testifying, as well as her demeanor while on the witness stand, was observed by the trial court, and her evidence on the material issues accepted as true by such court, we are not at liberty to reject such positive evidence. The findings of the lower court, given in substance above, are adopted as the findings of this court, on all matters to which such findings relate.

The findings of fact made by the trial court, as above stated, and adopted as the findings of fact by this court, effectually dispose of this appeal. Texon Oil & Land Co. of Del. v. Hanszen et al. (Tex. Civ. App.) 292 S. W. 563; Whitham & Co. v. Kemp (Tex. Civ. App.) 66 S.W.(2d) 462, 463; Ehrig v. Garlin (Tex. Civ. App.) 63 S.W.(2d) 898; National Bond & Mortg. Corp. v. Davis et al. (Tex. Com. App.) 60 S.W.(2d) 429; Chapman v. First National Bank (Tex. Civ. App.) 275 S. W. 498.

■■ Appellant contends that, since appellee did not deny under oath the authority of G. T. Hudson to sign the letter of May 5, 1932, addressed to appellant, and plead by it in its answer, as well as his authority to bind appellee by its contents, such facts are conclusively presumed. To this contention we cannot agree. It must be borne in mind that appellant does not claim to have been the purchaser of the claim to prior oil runs, but merely denies the right of appellee to such claim, on the theory that it had sold such claim to F. O. Akin, and that F. O. Akin is the owner of same. It did not interplead Akin, nor did he make himself a party, though he personally appeared as a witness in the trial. This letter could have been pleaded only as an admission by appellee's alleged agent that Akin was such owner. The first paragraph of the letter states that the "Helvir Oil Company, by assignment dated May 3, 1932, has conveyed all its right, title and interest in and to its oil and gas lease covering 14.17 acres of land out of the Willis-Smith 43 acre tract on the J. S. Carouthers Survey." This recitation is made the basis for the statement that: "You (appellant) are hereby authorized to pay to the said F. O. Akin or order for all oil you have run from said wells, it being our understanding that you have been running the oil from and including March 9, 1932, to date. You are instructed to make payment of oil runs from this property to Mr. Akin, regardless of what time you connected with the wells thereon."

It clearly appears on the face of this letter that the order to pay the prior oil runs to Akin is based on the writer's construction of the lease assignment, and is not based on any collateral agreement, independent of the lease contract, to transfer said prior oil runs to Akin. Do the terms of the assignment warrant this construction? We do not think so. If we give to the lease contract the construction most favorable to appellant's contention, it transfers to Akin appellee's interest in the lease and all property incident to such lease. These prior oil runs had been taken from the lease and sold and delivered to appellant and were not, on May 3, 1932, connected with or incident to the lease, and could not be transferred to Akin by a mere transfer of such lease.

Articles 2010 and 2004, R. S., have no application to this character of pleading. Stevens v. Equitable Mfg. Co., 29 Tex. Civ. App. 168, 67 S. W. 1041; Mutual Reserve Life Ins. Co. v. Jay (Tex. Civ. App.) 101 S. W. 545. Article 2005, R. S., provides that: "The plaintiff need not deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted." So, when appellant filed its answer setting out the letter in question as a special defense, this statute entered a general denial for appellee as to the effect of such language, without any written plea.

We have carefully read the statement of facts in order to determine appellant's contention that the findings of fact necessary to support the judgment are against the great preponderance of the evidence, with the result that, after construing the evidence in its most favorable attitude in support of the judgment, we overrule this contention. See authorities first cited in this opinion.

It necessarily follows that, in our opinion, the judgment should be affirmed, and it is so ordered.

Affirmed.