**OTC PETROLEUM CORPORATION,**
**Appellant,**

v.

**BROCK EXPLORATION CORPORA-TION, Brock Oil and Gas Corporation, and Brock Exploration Corporation 1979-1, Ltd., Appellees.**

No. 07-91-0241-CV.

Court of Appeals of Texas,
Amarillo.

Aug. 10, 1992.

Rehearing Overruled Aug. 24, 1992.

Lemon, Shearer, Ehrlich, Phillips & Good, Mitchell G. Ehrlich, Perryton, for appellant.

Ellison, Schweinle, Parish & Beerbower, P.C., David G. Beerbower, Houston, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Does a general assignment of all rights, title and interest in an oil and gas lease, including the assignment of all contractual rights attributable or incident thereto without qualification, also convey the accrued personalty rights in and derived from contracts included in the assignment? Answering affirmatively, and thereby disagreeing with the trial court's determination that a previously accrued, but unpaid, monetary claim based on one of the contracts assigned was personalty separate from the assigned contract, we will reverse the judgment of the trial court and render judgment.

The parties entered into a stipulation of facts, which reveals that by a 14 June 1989 assignment, Brock Oil and Gas Corporation, as Managing General Partner for Brock Exploration Corporation 1979-1,

LTD. (collectively referred to as Brock),[1] assigned to OTC Petroleum Corporation the following:

1. All of [Brock's] right, title and interest in and to the oil, gas and mineral leases ... and the Jones 25–406–1 Well, and the Jones 25–406–2 Well ... INSOFAR AS SAID LEASES COVER RIGHTS BETWEEN THE SURFACE OF THE EARTH AND THE BASE OF THE CHESTER FORMATION....

2. [A]ll of [Brock's] rights, titles, interests, tenements, hereditaments, appurtenances, benefits and privileges attributable or incident to the working interest assigned, including ... (c) all of the real, personal and mixed property of [Brock] located upon or used in connection with the operation of the SUBJECT INTERESTS, on an "as is, where is" basis including wells, well equipment, casing, tanks, gas separation and field processing units, crude oil, condensate or products in storage or in pipelines....

3. All of [Brock's] rights in, to, under or derived from all agreements and contractual rights, easements, rights-of-way, servitudes, and other estates relating to the SUBJECT INTERESTS, including production sales contracts, operating agreements, area of mutual interest agreements, pooling, unitization, or communitization (sic) agreements, purchase, exchange or processing agreements, casinghead gas contracts, balancing agreements, surface leases, easements or rights-of-way, farmout or farmin agreements, dry hole or bottom hole contribution agreements, seismic agreements, permits, licenses, options, orders and all other contracts, agreements and instruments relating to the exploration for production, storage, treatment, transportation, processing, or sale or disposal of oil, gas, and other hydrocarbons, water, or other substances from the SUBJECT INTERESTS.

The assignment, although executed on 28 July 1989, was "made effective as of 7:00 AM, June 1, 1989."

Sometime prior to the assignment, Brock and Northern Natural Gas Company, a division of Enron Corp., entered into a contract containing a take-or-pay provision relating to the sale of natural gas produced by the Jones wells. Before the effective date of the assignment, Northern became obligated to pay, but had not paid, approximately $38,000.00 pursuant to the take-or-pay provision in the contract.

Additional to the stipulation of facts, the parties agree that the assignment's language is unambiguous. There is no question that the Brock–Northern gas contract was assigned to OTC by the above quoted language of paragraph 3 of the assignment.

The parties' dispute stems from their conflicting interpretations of the paragraph 3 language. The dispute presents this question: Did Brock, by the unambiguous language of the assignment, retain or pass to OTC the accrued take-or-pay claim against Northern?

Asserting its entitlement to the take-or-pay liabilities, OTC brought suit against Enron and Brock. By its live trial pleadings, OTC sought a declaratory judgment decreeing that the assignment conveyed the accrued take-or-pay claim to it along with the gas contract, and that it was entitled to the amount of the claim. Brock answered with a general denial and counterclaimed, alleging that claims on assigned contracts prior to the effective date of the assignment were not covered thereby, and that the right to the monies owing by Northern belonged to it.

While the pleadings were being finally cast, and pursuant to a settlement agreement and agreed order, Northern placed $39,410.71 in the registry of the court in payment of the take-or-pay claim, and Enron was dismissed from the suit. The parties also stipulated to the deposit, and further stipulated that the party in whose favor a final declaratory judgment is awarded shall be entitled to the funds.

1. The collective reference to "Brock" also includes Brock Exploration Corporation, a named appellee in this appeal.

The trial court concluded that since the take-or-pay claim accrued while Brock owned the interest in the Jones wells, the claim was severed from the Brock–Northern gas contract, was separate personalty not expressly conveyed by the assignment and, therefore, was not assigned to OTC. Thereupon, the court awarded Brock the $39,410.71, together with interest accruing thereon, held in the registry.

The court adopted the facts stipulated by the parties as its findings of fact, from which the court drew the following conclusions of law:

1. Personal property does not pass in an assignment of an oil and gas lease unless it is expressly passed.

2. An unambiguous assignment of oil and gas leases which is, on its face made effective at a time certain, does not pass personal property contract rights which accrued prior to that effective time unless the same are expressly passed in the assignment.

3. Personal property take or pay sums which accrued prior to the effective date of an oil and gas lease assignment made effective on its face at a time certain where the assignment does not specifically convey such take or pay sums, do not pass with the assignment, but rather remains the property of assignor.

[4]. Where a contract is unambiguous the Court must look solely to the terms thereof in determining its meaning.

5. The assignment dated June 14, 1989 from Brock Oil and Gas Corporation as Managing General Partner for Brock Exploration Corporation 1979–1 LTD. to OTC Petroleum Corporation effective at 7:00 a.m. June 1, 1989 did not convey to OTC Petroleum Corporation any take or pay sums owned by Brock against any party which accrued prior to 7:00 a.m. June 1, 1989.

6. Brock Oil and Gas Corporation is entitled to receive all funds in the registry of the court in this cause.

Three of these conclusions furnish the premise for OTC's appeal.

By three points of error, OTC contends that the trial court's conclusions of law numbers three,[2] five, and six are erroneous. OTC submits this is so because (1–2) the claim against Northern was conveyed to OTC by the unambiguous language of the assignment, and as a consequence, (3) OTC is entitled to the funds held in the court's registry. Since the issues are interdependent, we will discuss all points of error conjointly.

■■■ We do not pause to consider the parties' several arguments regarding the application, or misapplication, of extrinsic evidence, for they agree, as do we, that the assignment is unambiguous. The construction of a written, unambiguous instrument is a question of law for the court. In this connection, the courts will give effect to the objective intention of the parties as expressed or as is apparent in the writing, since the parties generally intend every clause to have some effect and in some measure to evidence their agreement. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). To ascertain the objective intention of the parties, the courts examine and consider the entire writing, seeking to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951).

■■■ The general rule, OTC and Brock agree, is that personal property does not pass in the assignment of an oil and gas lease unless it is expressly passed. *Phillips Petroleum Company v. Adams*, 513 F.2d 355, 363 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975). Brock understandingly supports the trial court's application of the general rule. Brock points out that because the sum owed by Northern became due prior to the assignment, the right to it was severed from the contract, thus, the right was sepa-

**2.** Although the court misnumbered its fourth conclusion by numbering it "3," it is clear from OTC's point and argument that its first contention of error is directed to conclusion correctly numbered "3."

rate personalty which was not expressly conveyed, and, therefore, was reserved, consistent with the holding in *East Texas Refining Co. v. Helvir Oil Co.*, 82 S.W.2d 392, 395 (Tex.Civ.App.—Dallas 1935, writ dism'd w.o.j.). To the contrary, OTC contends that Brock's take-or-pay claim against Northern arose out of the Brock–Northern gas contract, was a right owned by Brock on the effective date of the assignment and, as a result, was expressly passed to it by Brock's assignment of all its contractual rights.

In pressing their respective contentions, both OTC and Brock, absent Texas authority addressing an assignment similar to the one in this litigation, rely upon the above-cited *East Texas Refining Co. v. Helvir Oil Co.* and *Phillips Petroleum Company v. Adams* authorities, together with a line of Fifth Circuit cases similar to *Adams.*[3] The holding in *Helvir* was that the mere assignment of an oil and gas lease and all property incident to such lease could not have transferred oil runs sold and delivered from the lease before the date of the assignment. 82 S.W.2d at 395.

In *Adams* and the other Fifth Circuit causes, the issue was the rightful ownership of the right to funds owed for gas sold to Phillips Petroleum Company, but not due and payable at the time the then owners of leasehold interests assigned all their right, title and interest in oil and gas leases with rights thereunder, together with all personal property and equipment used or obtained in connection therewith and located thereon. Following the general rule, the *Adams* court, noting that the assignment did not mention a right to the suspense money or other personalty unrelated to the extraction process, held that the right to payment for past production, which had no effect upon the value to the leaseholder of the oil and gas still in the ground at the time of assignment, was personal property not expressly passed by the assignment. 513 F.2d at 363–64.

■ These authorities, albeit instructive, do not control the decision on the assignment before us. Underlying the holdings of those authorities is the fact that the assignments did not mention any personalty unrelated to the extraction process. Here, the assignment conveys, among other things, all of Brock's "rights in, to, under or derived from all agreements and contractual rights ... including production sales contracts ... purchase, exchange or processing agreements ... and all other contracts ... relating to the ... sale or disposal of oil, gas...."

Of a certainty, Brock's take-or-pay claim was a contractual right derived from a contract relating to the sale of gas, which was a right included in the conveyance without qualification. As such, the unqualified assignment operated to transfer to OTC all the right, title, or interest of Brock in the take-or-pay claim assigned.[4] *O'Neil Engineering Co. v. First Nat. Bank*, 222 S.W. 1091, 1094 (Tex.Comm'n App.1920, holding approved). OTC's three points of error are sustained.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered that OTC shall have and recover all of the funds held in the registry of the trial court in this cause. Tex.R.App.P. 80(b)(3), 81(c). Costs of this appeal are taxed to Brock. Tex.R.App.P. 89.

---

3. *Phillips Petroleum Company v. Hazlewood*, 534 F.2d 61 (5th Cir.) 1976; *Phillips Petroleum Company v. Riverview Gas Compression Company*, 513 F.2d 374 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975); *First National Bank of Borger v. Phillips Petroleum Company*, 513 F.2d 371 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975); *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975).

4. A like result was reached in *Northwest Oil & Refining Co. v. Honolulu Oil Corp.*, 195 F.Supp 281 (D.C.Mont.1961), where Northwest assigned "all of its rights, interests and obligations" in a crude oil contract, but attempted, by letter, to exclude certain specified, but not all, obligations accruing on the assigned contract before the effective date of the assignment. The court held that Northwest, "having assigned all of its right, title and interest in the contract, no longer has any interest therein and may not accordingly maintain this action." *Id.* at 287.